UNITED STATES of America, Plaintiff-Appellee,

v.

Joseph Nello SPINO, Defendant-Appellant.

No. 14829.

United States Court of Appeals Seventh Circuit.

April 9, 1965.

Rehearing Denied May 10, 1965.

John N. Stanton, East Chicago, Ind., for appellant.

Alfred W. Moellering, U. S. Atty., Frank J. Violanti, Asst. U. S. Atty., Fort Wayne, Ind., for appellee.

Before KNOCH, CASTLE and KILEY, Circuit Judges.

KNOCH, Circuit Judge.

Defendant, Joseph Nello Spino, was charged in a four-count indictment with (two counts) interstate travel (between Illinois and Indiana) in aid of an unlawful activity under Indiana law in violation of Title 18 U.S.C. § 1952, and with (two counts) wilfully and knowingly making, subscribing, and filing a false wagering tax return on May 4 and May 31, 1962, by failing to list four agents (other than the one he had listed) who were receiving wagers on defendant's behalf, in violation of Title 26 U.S.C. § 7206 (1).

The jury found defendant guilty on all four counts. He was sentenced to serve eighteen months on each count, concurrently, and fined $3,000.

Defendant lists the following as errors:

"1. The verdict is not supported by substantial evidence such as to establish guilt beyond a reasonable doubt.

"2. The court erred in denying defendant's motions for judgment of acquittal as to each count of the indictment.

"3. The prosecutor committed prejudicial misconduct during his summation and argument to the jury, testifying to them as a fact his inside mis-information.

"4. Title 18, U.S.C.A. Interstate Travel in Aid of Racketeering is unconstitutional."

Title 18, U.S.C. § 1952, prohibits travel in interstate commerce by any mode of transport with the intent to promote, carry on, or facilitate the carrying on of a business enterprise involving gambling in violation of the laws of the state where it is carried on. United States v. Zizzo, 7 Cir., 1964, 338 F.2d 577. In that decision, at page 579, this Court upheld the constitutionality of the statute.

■ We must view the evidence, of course, in the light most favorable to the government and may reject no inferences properly deducible from that evidence. United States v. Shaffer, 7 Cir., 1961, 291 F.2d 689, 691; Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Coduto, 7 Cir., 1960, 284 F.2d 464, 466.

Defendant was under extensive surveillance by special agents of the Internal Revenue Service, U. S. Treasury Department, whose testimony was offered at the defendant's trial. These special agents testified to numerous instances of defendant's interstate travel between locations in Chicago and Cicero, Illinois, to 3460 Pennsylvania Avenue, East Chicago, Indiana, where gambling activity in violation of Indiana Statutes (§§ 10–2304, 10–2307, 10–2312, Burns' Ind.Stat.1956 Replacement) was in operation. A representative of the Illinois Bell Telephone Company testified to telephone calls between defendant's home in Chicago and the East Chicago, Indiana, location.

■ There was further testimony from which the jury could reasonably have concluded that defendant was the man in charge of the operations in East Chicago, and the jury could have inferred with equal reason that he was being financed by sources in Chicago, Illinois.

Defendant states that he did not operate the East Chicago establishment until June, 1962, when he took over a lease from Frank Santos, also known as Efrain Frank Santos, who had rented the premises in December, 1961, and who paid the rent until June 1, 1962. Mr. Santos testified that he brought in a pool table and a poker table which he later removed to allow one Johnny Reveira to bring in a Monte table and equipment for Bolita, a numbers game played with a cage of ping pong balls, on which bets could be brought in for bettors who were not present at the drawings. Special Agent Michael Gonzales testified to placing Bolita bets in May and June, 1962, with Castro Rosado, Genaro Ruiz, Frank Vasquez and Augustin Flores. The last two denied working for the defendant and testified that they took Special Agent Gonzales' bets in only as a personal favor to him.

There was considerable testimony about Monte and the nature of its operation. Defendant and other witnesses testified that the players in Monte conduct their own card game, the table being made available merely as an accommodation from which the "house" takes no profit; that anybody can serve as the banker from whom the dealer receives a gratuity for his services if the banker wins. There was conflicting testimony as to the extent of the defendant's participation in these Monte games, including evidence that defendant was seen taking away a large sum of money from the Monte table. There was also testimony that defendant had something to do with the nightly drawing in the Bolita game.

It is defendant's contention that he did not operate the East Chicago establishment until after it had been closed and remodeled in April and May, and after he had moved to Indiana. He applied for a wagering stamp before the establishment reopened and he stated that he hired only Mr. Santos to work for him. Mr. Santos testified to the same effect,

and stated that Reveira had conducted the numbers business until late April, 1962.

Defendant testified that the four men listed above made bets only for themselves and sometimes for their friends but that they did not work for defendant; that anybody who brought in bets, employee or not, would receive a cash discount.

Special Agent Gonzales testified that these four men were accepting wagers from others and turning them in to defendant or to his acknowledged agent Santos, usually in defendant's presence.

The jury could have resolved the conflict in this testimony by deciding that the defendant did know the four named men were accepting bets for him when he executed the forms setting out only the name of Mr. Santos. Zambito v. United States, 4 Cir., 1963, 315 F.2d 266, cert. den. 373 U.S. 924, 83 S.Ct. 1524, 10 L.Ed.2d 423.

Defendant argues that the jury failed to give fair consideration to the various issues which turned on the jury's estimate of the credibility of the witnesses because of the misconduct of the prosecutor. The prosecutor asked defendant whether his orders came from Chicago. Defendant denied that his orders came from Chicago and when asked whether he knew certain persons named by the prosecutor, said that he had "no idea." No objection was made at that time. In argument to the jury, the prosecutor said:

> "You heard Special Agents Poppa and Stevens testify that they trailed the defendant from Chicago to East Chicago, from Chicago, Illinois, to East Chicago, Indiana.
>
> "Why he traveled is something that you have to decide—I can tell you why, the defendant takes orders from Chicago—"

Objection to that statement was sustained. The jury were instructed to disregard it.

We have given careful consideration to defendant's assertion that despite the instructions of the Court the jury must have assumed from the statement that the prosecutor had told them that "he could personally assure them that the defendant was an agent of dark forces in Chicago."

We cannot agree that in the context of the remarks the effect on the jury was that pictured by the defendant, and that the result of the comment was so prejudicial as to require reversal of the conviction. United States v. Zizzo, 7 Cir., 1964, 338 F.2d 577, 581.

The judgment of the District Court is affirmed.

Affirmed.