UNITED STATES of America,
Appellee,

v.

Nathan SUSKIN, Appellant.

No. 51, Docket 35443.

United States Court of Appeals,
Second Circuit.

Argued Sept. 16, 1971.

Decided Nov. 1, 1971.

---

Louis Bender, New York City (Lloyd A. Hale, New York City, of counsel), for appellant.

Raymond J. Dearie, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., for the Eastern District of New York, David G. Trager, Asst. U. S. Atty., of counsel), for appellee.

Before MOORE, SMITH and HAYS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Nathan Suskin was found guilty by a jury in the United States District Court for the Eastern District of New York, George Rosling, Judge, of willful tax evasion for filing a false return in 1961, in violation of 26 U.S.C. § 7201, and acquitted of the same charge for failing to file any return in 1962, a special verdict indicating that the prosecution had failed to prove beyond a reasonable doubt that a return for 1962 was not filed. Suskin appeals from the resulting judgment of conviction on count one of the indictment. Suskin received an eighteen month sentence, fifteen of which were suspended, a year's probation, and a fine of $2,500. We find no error and affirm the judgment.

The business arrangements which gave rise to the suspect returns will be outlined only sparingly, without regard to Suskin's numerous points of contention at trial, since no attack is made in this appeal on the sufficiency of the evidence to support a verdict of guilty on count one. Suskin was a principal in Derby Fabrics, Inc. ("Derby"), a textile converting and jobbing concern of which one Finkle was president and sole stockholder. Prior to 1961 Derby accumulated substantial losses and debts personally guaranteed by Suskin. Sometime in 1960, Suskin entered a business relation-

ship with Jerry Kassel, Inc. ("Kassel"), also a textile converter, which hoped to profit from Suskin's contacts within the textile industry.

In 1961 Suskin received some $32,000 from Kassel, largely, at Suskin's request, in the form of checks made payable to Derby which were cashed by Suskin; he was also reimbursed for between $1,500 and $2,000 in out-of-pocket expenses. Suskin reported a gross income of $11,650 and claimed deductions in the amount of $1,040, which were allowed by the government. Suskin explained that the unreported income received from Kassel had all been expended on "premium" payments (payoffs) to other business concerns, and payments on Derby's outstanding loans. The government contended that in fact substantially all of the excess was pocketed by Suskin.

The facts underlying count two of the indictment, on which Suskin was acquitted, are important to this appeal only insofar as they detail a markedly different method of payment, and wholly different figures, than those set forth in count one. The government charged that Suskin, who reported $14,250 and no deductions on his copy of his 1962 return, which allegedly was never filed, in fact received $37,000 in compensation in 1962, including $15,250 in salary, $9,500 in commissions and $13,500 in unaccounted for travel and entertainment expenses; the mode of payment was said to be a salary check of $250 per week together with a travel and entertainment check of $250 per week with the balance received in commissions.

■ To defendant's explanations that his unreported income for 1961 had been spent variously on debt and "premium" payments, the district court applied the "leads" doctrine of Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L. Ed. 150 (1954), requiring the government to demonstrate that it had followed up the leads provided by defendant. Government compliance took the form of testimony by an Internal Revenue Service agent as to his conversations with third persons in positions to have received any debt or "premium" payments made. We agree with defendant, as the government now concedes, that the "leads" doctrine, conceived by the *Holland* court where the government's case rested on the "net worth" theory, is misapplied here where the government's method of proof was by specific items; we hold, however, that the error was harmless. First, the district court twice warned the jury that it must not consider the truth or falsity of the extrajudicial declarations, but only whether they showed the government had followed up its leads. Second, with regard to the "premium" payment lead, any impact the extrajudicial declarations might have had was mitigated when the trial judge elicited from the agent the concession that he would not expect those he questioned to admit receiving payoffs. Finally, with regard to the debt repayment lead, the agent's testimony was corroborated by subsequent direct testimony of the extrajudicial declarant.

■ Defendant's remaining contentions, five in number, none of which we find meritorious, will be dealt with seriatim. Inasmuch as defendant admits having received and cashed some $32,000 in 1961 checks payable to Derby, the claim that he should be allowed to use Derby's prior losses to present a loss carry forward defense is absurd; the losses were corporate but the money never went to the corporation. Hauptman v. Director of Internal Revenue, 309 F. 2d 62 (2d Cir. 1962) involves an entirely different case where the shareholder of a one-man corporation elected, as the law permitted, to come under Subchapter S, thereby benefitting personally from the corporation's net operating losses even though liquidation was foreseeable.

■ The district court was correct in excluding evidence that the Internal Revenue Service had finally allowed Kassel a deduction for travel and entertainment. It is true that the Internal

Revenue agent who conducted the audit on Kassel testified at trial that he had disallowed those deductions; but defense counsel, not the government, brought the disallowance to the jury's attention. The district court had previously directed defense counsel not to attempt to elicit the results of the audit of Kassel, and afterwards instructed the jury to disregard that information.

The district court's refusal to charge the rule of Cohan v. Commissioner of Internal Revenue, 39 F.2d 540 (2d Cir. 1930), could not have affected defendant's conviction on count one of the indictment. Defendant was allowed all claimed deductions for travel and expenses in 1961; he attributed his unreported income to repayment of debts and to payoffs, to which the *Cohan* rule plainly has no relevance. Moreover, the jury could not have believed defendant made any substantial expenditures even for the purposes claimed, and still have found him guilty beyond a reasonable doubt.

It was proper to allow the jury to pass on both counts together. The jury was able to distinguish between them and indeed acquitted on the second.

Lastly, the district court did not abuse its discretion by refusing to grant an adjournment for the eight day Passover season or by excusing jurors of the Jewish faith. Defendant's contention that he was denied a petit jury composed of a fair cross section of the community in violation of 28 U.S.C. §§ 1861, 1862 and 1863 is belied both by the district court's efforts to accommodate prospective jurors of the Jewish faith, specifically by the announcement during *voir dire* that there would be no sessions on the principal holidays, and by the actual qualification of Jewish jurors. There is no indication either of systematic exclusion of Jewish jurors or that defendant was denied a fairly representative jury.

Judgment affirmed.