**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Phillip ZWEIG, Defendant-Appellant.**

**No. 71–1342.**

United States Court of Appeals,
Seventh Circuit.

Argued May 19, 1972.

Decided Sept. 15, 1972.

Certiorari Denied Jan. 8, 1973.
See 93 S.Ct. 921.

Joseph V. Simeri, Mishawaka, Ind., for defendant-appellant.

William C. Lee, John R. Wilks, Asst. U. S. Atty., Fort Wayne, Ind., for plaintiff-appellee.

Before KILEY and PELL, Circuit Judges, and GORDON, District Judge.*

* District Judge Myron L. Gordon of the Eastern District of Wisconsin is sitting by designation.

**1218**

PELL, Circuit Judge.

Defendant-appellant Phillip Zweig was convicted by a jury on three counts of fraud by interstate wire communication in violation of 18 U.S.C. § 1343.[1] After denying his motions for arrest of judgment and for acquittal, the court sentenced Zweig to four years' imprisonment on Counts I and II, the sentences to run concurrently, withheld imposition of sentence as to Count III, and ordered the defendant to be placed on probation for five years upon his release from custody.

Zweig raises three issues on this appeal: (1) whether the trial court erred in admitting evidence concerning the content of certain telephone calls the defendant allegedly made; (2) whether there was sufficient evidence to support the jury's finding of guilty; and (3) whether the court failed to instruct the jury properly on the elements the Government was required to prove.

The indictment charged that from on or before February 1, 1968, and continuing through April 4, 1968, Zweig devised a scheme and artifice to defraud various firms and to obtain property from them by false and fraudulent pretenses, representations and promises, knowing at the time the falsity thereof. More specifically, the defendant allegedly had held himself out to be Donald Zajdel, doing business as the Pres-Del Electric Company of Gary, Indiana, and, in three interstate telephone communications, placed or had placed for him orders for property for which he, Zweig, did not intend to pay. The real Donald Zajdel allegedly never authorized the defendant so to use his name.

■ Two of the three occurrences (corresponding to Counts I and II) involved the Emerson-Midwest Corporation, then located in Chicago, Illinois. On this appeal, Zweig for the first time objects to the introduction into evidence of telephone conversations between employees of the Emerson-Midwest Corporation and a man purporting to be Donald Zajdel. Zweig maintains that the trial court should have suppressed testimony about the content of the calls absent authentication of the calls and evidence identifying the defendant as the person claiming in the calls to be Donald Zajdel.[2]

Recognizing the applicability of the rule that timely objections to evidentiary matters must be made at trial to preserve any error for consideration by

---

1. 18 U.S.C. § 1343, "Fraud by wire, radio, or television," provides:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

2. Although Zweig alleged in his brief that the Government had failed to authenticate the telephone call referred to in Count III, he abandoned this contention at oral argument. The trial transcript reveals that both the Government and defense counsel elicited testimony directly authenticating the call in question. For example, defense counsel had the following colloquy with the chief prosecution witness for Count III:

"Q. How many times did you talk personally to Phil Zweig? . . . In person . . . .

"A. Oh, I talked to him once in Benton Harbor and once in Gary. [The witness had previously identified defendant Zweig in open court as the man with whom he had done business at those two locations.]

"Q. From these two personal conversations you are stating absolutely that that is the same voice you heard on the telephone on each and every call, each time?

"A. Absolutely."

Further, as to all of the conversations, counsel at oral argument conceded that if there had been timely objection, the district court would probably (and properly) have admitted the original testimony provisionally, subject to its being "connected up" with the defendant.

a court of appeals, Zweig invokes Rule 52(b), Fed.R.Crim.P. ("Plain Error"). As the Government admits, "[t]he whole of the Government's case, and indeed, what the Government was required to prove, was that the defendant made the phone calls in question"; therefore, despite the failure of Zweig to object below, we will consider the merits of his contention.

We do not, in so doing, necessarily deny the arguable merit of the Government's contention that "plain error" would not attach per se to the admission of the evidence without objection. Rather, it is asserted, if the Government failed to "connect up" the calls with the defendant, this would be a matter of failure of proof of the case. We have handled the matter otherwise here, however, in view of the fact that the testimony did include the information that the caller had identified himself as Donald Zajdel.

The evidence at trial disclosed the following. On February 1, 1968, the inside order desk clerk for Emerson-Midwest received a telephone call from a man identifying himself as Don Zajdel from the Pres-Del Electric Company of Gary, Indiana, and giving a Gary address and telephone number. The caller wanted to order 65 television sets and provided credit references for himself in the name of Donald Zajdel. In either this conversation or in a subsequent telephone conversation an hour later, "Zajdel" said that a driver would pick up the sets in Chicago the next day.

A man with a truck did arrive at Emerson-Midwest the following day. At that time, the order clerk received another call from "Mr. Zajdel" in which "Zajdel" requested that the clerk tell the driver to call him at Pres-Del Electric. The telephone number that the caller furnished was the same number that "Zajdel" had given the clerk the day before. The driver took the sets, which had been billed to Pres-Del Electric.

A few days later the order clerk had another call from "Zajdel." This time the caller said that 50 of the sets originally ordered were defective and that he wanted replacements. It was agreed that the allegedly imperfect sets would be returned when "Zajdel's" driver came to pick up the replacements. A driver later came to Emerson-Midwest and took away the new sets. He did not return the original sets.

In checking the credit of Donald Zajdel, Emerson-Midwest's credit manager, using the telephone number in his firm's files, called "Don Zajdel" in Gary and spoke with an individual who claimed to be that person. "Zajdel" acknowledged the debt to Emerson-Midwest. In mid-February, the credit manager went to Pres-Del Electric in Gary and was there assured by a man representing himself to be Donald Zajdel that he would pay for all the television sets received. At Zweig's trial, the credit manager identified the defendant as the man who had told him he was Donald Zajdel. The witness further testified that the voice he had heard in subsequent telephone conversations with "Zajdel" was that of defendant Zweig and that Zweig had given him $500 on partial payment for the merchandise.

Emerson-Midwest eventually turned over collection efforts to the operator of a collection agency, who testified that he went to the Pres-Del Electric Company in Gary, where a man identified himself as Donald Zajdel. In open court, the witness pointed to the defendant as the person who had so represented himself. The witness also stated that the defendant admitted to him that he was in fact Phillip Zweig and not Donald Zajdel. He also received $500 from Zweig in partial payment.

Although none of the witnesses associated with Emerson-Midwest remembered what the truck driver who picked up the sets looked like, witness Earl DeBold testified that, during the period in question, he had worked for Zweig, whose office was in the same building in Gary where Pres-Del Electric was located, and that, at Zweig's request, he

twice went to the Emerson-Midwest Corporation to pick up some television sets. He took these sets to Gary, Indiana. DeBold further testified that he had heard the defendant represent himself to be Donald Zajdel in telephone conversations with other persons.

Two other witnesses, both employees of the real Donald Zajdel at the time, stated that defendant Zweig, in their presence, had introduced himself to others as Don Zajdel and that he had made arrangements to have certain telephone calls for "Donald Zajdel" transferred to himself. The real Zajdel testified that he, as operator of the Pres-Del Electric Company, had never employed Phillip Zweig and had not authorized him to use his name in negotiations with the Emerson-Midwest Corporation.

■■ We agree with Zweig that the prosecution did not authenticate the telephone calls mentioned in Counts I and II before it elicited testimony about their contents. However, as our summary of the evidence adduced at trial shows, the Government did, in fact, subsequently prove a sufficient connection between the calls and the defendant. The ultimate question of authenticity was for the jury to decide. That the evidence presented was circumstantial rather than direct does not mean that it was inferior evidence; indeed, such evidence may be as persuasive to identify the other party to a telephone conversation as testimony that the voice was recognized. *E. g.,* Cwach v. United States, 212 F.2d 520, 524–525 (8th Cir. 1954); United States v. Fleming, 134 F.2d 776, 778 (2d Cir. 1943); Van Riper v. United States, 13 F.2d 961, 968 (2d Cir. 1926); United States v. Lo Bue, 180 F.Supp. 955 (S.D. N.Y.1960). *Cf.* United States v. Platt, 435 F.2d 220, 223 (7th Cir. 1970), cert. denied, 402 U.S. 913, 91 S.Ct. 1394, 28 L.Ed.2d 655 (1971); Carbo v. United States, 314 F.2d 718, 742–743 (9th Cir. 1963), cert. denied, 377 U.S. 953, 84 S. Ct. 1625, 12 L.Ed.2d 498 (1964). We find no plain error requiring reversal.

Zweig also contends that the evidence was insufficient to establish his guilt beyond a reasonable doubt. In resolving this issue, we are bound by well-established limitations: "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); United States v. Spino, 345 F.2d 372, 373 (7th Cir. 1965), cert. denied, 382 U.S. 825, 86 S.Ct. 58, 15 L.Ed. 2d 70.

■ Applying this standard to the Government's case for Counts I and II, we hold that the jury was entitled to find Zweig guilty as charged. As we discussed above, strong circumstantial evidence pointed to Zweig as the originator of the telephone calls in question. Further, the evidence supported the inference that the calls came from Gary, Indiana, and were, therefore, transmitted by wire in interstate commerce. Several witnesses testified to face-to-face meetings with the defendant where he displayed knowledge of the transactions with Emerson-Midwest. Without authorization to act on behalf of Donald Zajdel or Pres-Del Electric Company, Zweig consistently represented himself to be Donald Zajdel of that firm. He obtained a second load of television sets—worth thousands of dollars—without returning the original, "defective" sets as he had promised to do. His promise of payment in full was never kept. In sum, we are persuaded that defendant Zweig made the telephone calls and perpetrated the fraud against the Emerson-Midwest Corporation.

The evidence in support of Count III included the following. On April 4, 1968, Harold Smith, the then manager of the Portage Meat Packing Company, Portage, Michigan, received a telephone call from Gary, Indiana. The caller, representing himself to be Donald Zajdel, said that he wanted to buy a load of boneless beef. When the manager advised him that his firm was not licensed to sell meat outside the State of Michigan, the caller requested the name of a

meat company that was nationally licensed.

About an hour later, the manager received another call from a man identifying himself as Donald Zajdel. The caller informed him that he had communicated with the other meatpacking company, that it was unable to supply the meat, and that he still wanted to buy beef from the Portage Meat Packing Company. The manager and the caller then entered into an agreement in which "Donald Zajdel" was to purchase 10,000 pounds of boneless beef, the order to be picked up that night by an employee of "Zajdel" at the Snowflake Motel in Benton Harbor, Michigan.

The manager, accompanied by a company driver,[3] went to the motel, where a man approached him and said, "My name is Phil. . . . I have come for that load of meat." As the beef was being loaded, the man gave Smith, in payment for the order, a check showing Donald Zajdel as drawer. In open court, Smith identified the defendant as the person with whom he had dealt at the Benton Harbor motel.

The following morning, an individual identifying himself as Don Zajdel telephoned Smith and stated, "I made a mistake on the check," that he was not doing business "with that bank any more." He announced that a certified check was in the mail. When no check from Gary arrived in the next few days, Smith called "Don Zajdel" and talked with the same person who had previously held himself out to be that individual. Smith was told that cash for the shipment would be sent with a truck driver who would pick up another load of meat. Later, in another telephone conversation, "Don Zajdel" claimed that the truck driver had absconded with the truck and money.

He again, however, promised Smith he would receive the money owed. After another wait in vain of several days, Smith went to Gary to the address given on the bad check. He asked to see Don Zajdel. An individual then came up to him, said "Smitty," and held out his hand. That individual was identified as the defendant. When Smith inquired about the money due, the defendant said, "I got plenty of money, this stuff [pointing to some electric motors and other items] all belongs to me . . . ." Another unkept promise was then made.

At trial, Smith testified that the voice of the caller who claimed to be Don Zajdel of Gary was that of the defendant. While Smith could not remember "precisely the company" with which the telephone caller was connected, and while Count III incorporates by reference the allegation that the defendant held himself out as Donald Zajdel, "doing business as Pres-Del Electric Company, Gary, Indiana," we do not find, on the basis of evidence adduced, that the evidence was insufficient because of Smith's failure to recall "precisely the company." The essential elements of the Count were more than adequately proven.

The real Donald Zajdel testified that he had neither made any telephone calls to Portage, Michigan, nor had authorized anyone else to make such calls. Further, he knew of no negotiations or dealings with the Portage Meat Packing Company. He also denied having signed the check that had been given to Smith.

In light of this testimony, we hold that the jury had sufficient evidence to find the defendant guilty of violating 18 U.S.C. § 1343 as alleged in Count III.

Finally, Zweig complains that the following instruction given by the court was improper and inadequate:

"I instruct you that it is not essential that the Government prove every element or part of the scheme alleged in the indictment. But, if you find from the evidence that sufficient elements or parts so alleged have been proved beyond a reasonable doubt and that the elements so proved were adequate to constitute a scheme to defraud,

---

3. At trial, the trucker corroborated Smith's testimony as to the shipment of beef.

then the Government has maintained its burden to establish a scheme to defraud."

This instruction supposedly "gave the jury liberty to choose or disregard, without restriction, any one or all of the elements alleged in the indictment in determining the existence or non-existence of the scheme or artifice to defraud."

At trial, Zweig made no objection to the charge.

"The Court: Does the defendant have any objection to the charge as given?

"[Defense counsel]: No, your Honor.

"The Court: Any request for further instruction?

"[Defense counsel]: No, your Honor.

"The Court: Very well."

Rule 30, Fed.R.Crim.P., provides in pertinent part:

"No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of 'the jury and, on request of any party, out of the presence of the jury."

■ We find no basis for holding that the giving of the challenged instruction, particularly when it is considered in conjunction with the rest of the judge's charge to the jury, was plain error counteracting the force of Rule 30. *See* Myrick v. United States, 332 F.2d 279 (5th Cir. 1964), cert. denied sub nom. Bergman v. United States, 377 U.S. 952, 84 S.Ct. 1630, 12 L.Ed.2d 497; Schaefer v. United States, 265 F.2d 750 (8th Cir. 1959), cert. denied, 361 U.S. 844, 80 S.Ct. 97, 4 L.Ed.2d 82.

Having examined the claimed errors and having found no grounds for reversal, we affirm the judgment of conviction.

Affirmed.