**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lucky JOHN, Defendant-Appellant.**

**No. 73–1905.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 26, 1974.

Decided June 24, 1975.

---

1. Rule 43(b) has been superseded, effective July 1, 1975, by Rule 611(c), Federal Rules of Evidence.

Robert S. Bailey, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Gary L. Starkman, Walter Jones, Jr., Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before RIVES,* Senior Circuit Judge, PELL and SPRECHER, Circuit Judges.

PELL, Circuit Judge.

This is an appeal from appellant's conviction by a jury on six counts of knowingly using a communication facility to import marijuana in violation of 21 U.S.C. § 843(b) and on six counts of importing marijuana in violation of 21 U.S.C. § 952(a). The appellant, Lucky John, raises these issues on appeal: (1) whether venue on the importation counts of the indictment was proper in the Northern District of Illinois; (2) whether the trial court erred in admitting the substance of a telephone conversation; and (3) whether the evidence introduced at trial was sufficient to support appellant's conviction for knowingly using a communications facility to import marijuana.

The evidence, taken in the light most favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), established the following significant conduct. In July of 1972, John, a citizen of Nigeria, asked Ophelia Martin, an employee at the Stony Island Medical Center in Chicago, to receive some packages for him. He explained to her that he was having domestic problems and preferred that the packages not come to his home. Martin acquiesced in appellant's request only after being told that the packages had already been sent. Two weeks later, two packages arrived at the Medical Center from Nigeria, one addressed to Martin and the other to Grace Anaya, Martin's co-worker. Shortly thereafter, appellant picked up those packages.

In mid-September of 1972, appellant again asked Martin to receive more packages and reiterated the story that the packages were already en route and that he could not receive them at home because of difficulties with his wife. Martin received no additional packages, however. Shortly thereafter, the Bureau of Customs seized a package in New York from Nigeria addressed to Martin that contained two pounds of marijuana. In October, 1972, appellant saw Martin and requested her to deny knowing him if anyone should inquire about him. Appellant also asked Grace Anaya to deny knowledge of him and informed her that the Bureau of Customs might approach her concerning packages containing marijuana. Customs agents did in fact seize a package containing two pounds of marijuana mailed to Anaya from Nigeria.

In August of 1972, appellant approached a fellow Nigerian, Sura Katu Shittu, and asked him to receive his mail temporarily because he was in the process of moving out of his apartment. Shittu agreed and provided appellant with the address of Pamela Tate, Shittu's fiancee. Appellant contacted Shittu

---

* Senior Circuit Judge Richard T. Rives of the United States Court of Appeals for the Fifth Circuit is sitting by designation.

to inquire about the arrival of packages, but was told that none had been received. Subsequently, customs agents seized a parcel addressed to Pamela Tate containing one pound of marijuana.

Also in August of 1972, appellant approached Mary Pilot, an employee of Pan American Airlines in Chicago, and asked her to receive a package containing a coat that appellant's wife had left in a hotel in Nigeria. Appellant followed up this request with frequent inquiries as to the arrival of the package. Pilot never received any package, but a package addressed to her containing eleven pounds of marijuana was seized by customs officials in New York.

On August 11, 1972, appellant asked Marilyn Thompson, a counselor at Central Y.M.C.A. College in Chicago, a school which John had attended, to receive packages for him while he was out of the country on a visit to Nigeria. Thompson agreed, and appellant instructed her not to open any of the packages she might receive. Appellant also approached Elaine Hunt, a secretary at the college, with a similar request, and told her not to open the package delivered.

On August 22, 1972, Edna White, another employee at Central Y.M.C.A. College, received a package from Nigeria and opened it in the presence of Thompson and Hunt. The package contained one pound of marijuana, and White immediately turned it over to Charles Cheek, Comptroller of the College.

At about this time,[1] John called Thompson to ask if any packages had arrived. Thompson told him that White had received a package, opened it, and then turned it over to Cheek. John responded that he would attempt to recover the package. White was then put on the telephone and John apologized for sending the package. Also, at about the same time, John called Hunt and told her that she would soon receive a package mailed from Nigeria. He asked her to hold the package for him and stated that he knew about the package delivered to White and would attempt to retrieve it from Cheek.

On August 23rd a male voice with a deep accent called Cheek stating "that the package that I had belonged to him." The voice repeated this information and then asked if Cheek knew what was in the package. Upon Cheek's affirmative response, the voice said he would call Cheek back and then "he said that there was enough in the package for both me and him and that we could split it, or that he would pay for it." The voice declined to give a number for a call back by Cheek.

Although there were no further calls to Cheek, Thompson did receive two further inquiries from the appellant concerning the package. In September, appellant called to ask if investigators had come to the college to discuss the package, and Thompson told him that they had. He again approached her in a restaurant in early October to ask if she had given any information to the authorities. She told him that she had disclosed what she knew.

## I.

John asserts that venue on the importing counts of the indictment was improper in the Northern District of Illinois.

■ The timing of the attack on venue is dependent upon whether the claimed lack of venue is apparent on the face of the indictment. If it is, appropriate objection must be lodged preferably prior to the commencement of trial but certainly before the close of the

---

1. There was some confusion on the part of Thompson, White, and Hunt as to the day on which these calls had been made. Hunt testified that her call was on August 21 or 22, however, other evidence indicated that the White package was not received until the 22nd. John knew when he talked to Hunt that Cheek had the package as did the male person who talked to Cheek on the 23rd. The defendant in his brief concedes that the Thompson and White conversations occurred on August 22, 1972. Viewing the evidence under the *Glasser* standard we are satisfied that the women at the college had communicated with John prior to the first and only call to Cheek.

Government's case. Where the defect is not apparent on the face of the indictment, the objection may be timely raised in a motion for acquittal. *United States v. Bohle,* 445 F.2d 54, 58–59 (7th Cir. 1971).

▮ If we assume arguendo, as contended by the appellant, that the crime of importation was completed when the mailed packages first reached the shores of the United States, which, of course, was elsewhere than inland Illinois,[2] the basis for objection was apparent on the face of the indictment. The importation counts charged that the defendant imported marijuana into the United States by means of parcels addressed to various locations in the Northern District of Illinois. Since access to this district via the mails without prior passage through other areas of the United States would have been impossible, it was apparent on the face of the indictment that the importation was a *fait accompli* somewhere else than in Illinois and objection was not timely raised.

▮ What we have said, however, applies only to Count 10. The packages that served as the basis for the other even numbered counts never arrived in Chicago, but were intercepted and seized by customs agents in New York. It can not be said, therefore, that the importations charged in those counts proceeded into the Northern District of Illinois because in fact they were terminated in New York when the packages were seized and not permitted to proceed on to their intended destination. Nothing is said in the indictment about the inter-

ception of the packages and that information appears for the first time in the record in the testimony of the Government's witness, Agent Bull. This objection to venue was preserved by the timely motion for acquittal and the judgments of conviction on all the importation counts except Count 10 (the count relating to the package received in Chicago by Edna White at Central Y.M.C.A. College) are reversed for failure of proof as to venue. *United States v. Jones,* 174 F.2d 746, 749 (7th Cir. 1949).

## II.

Appellant also argues that the district court improperly permitted Charles Cheek to testify as to the content of the phone conversation of August 23, 1972, between him and an unidentified person who claimed ownership of the package containing marijuana. He asserts that the Government failed to provide a proper foundation from which the jury might determine that appellant was the unidentified caller.

▮▮ The connection between a telephone call and the caller may be established by circumstantial evidence. *United States v. Zweig,* 467 F.2d 1217, 1220 (7th Cir. 1972). In determining whether a proper foundation has been laid, the district judge must decide whether the circumstantial evidence presented is sufficient to permit the jury, acting as reasonable persons, to find that the caller is who the proponent claims him to be. *Carbo v. United States,* 314 F.2d 718, 743 (9th Cir. 1963), *cert. denied,* 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498 (1964).

---

**2.** Because of the result we reach we need not decide the applicability of 18 U.S.C. § 3237(a):

"(a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district. may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

"Any offense involving the use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of

and prosecuted in any district from, through, or into which such commerce or mail matter moves."

Decisions in at least two other circuits indicate the applicability of this statute and that venue would be proper in the Northern District of Illinois at least as to any package which arrived in that district. *United States v. Jackson,* 482 F.2d 1167 (10th Cir. 1973), *cert. denied,* 414 U.S. 1159, 94 S.Ct. 918, 39 L.Ed.2d 111 (1974); *United States v. Barnard,* 490 F.2d 907, 911 (9th Cir. 1973), *cert. denied,* 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974).

Our function on review is limited to assessing whether the admission of evidence constituted an abuse of judicial discretion. *Carbo v. United States, supra.*

■ In our opinion, the district court did not abuse its discretion in allowing the telephone conversation with Cheek to be admitted into evidence. Placed in the context of a number of calls to various persons at the college, and the timing of those calls, there was sufficient foundation for the admission. It was for the jury to determine whether the circumstantial evidence was sufficient to make attribution of the call to John.

Our holding in respect to this issue is strengthened by two additional factors. The evidence without the Cheek telephone conversation would have been overwhelmingly convincing that the package received and opened by White, which package contained marijuana, had been mailed by John. The Cheek telephone conversation was not needed as clinching corroboration. Given the proof regarding communications with Thompson, Hunt, and White, it is impossible to conclude that the challenged testimony "meant the difference between acquittal and conviction." *United States v. Martin,* 154 U.S.App.D.C. 359, 475 F.2d 943, 949 (1973); *Milton v. Wainwright,* 407 U.S. 371, 378, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972).

Finally on this issue, it is not at all clear from the record that during the trial there was not a determination not to preserve the claimed error. It is true that there was a colloquy between the court and defense counsel about the admissibility of the conversation. Well before Cheek was called to the stand, the court indicated that in the context of the calls to the three women there was enough "to go to the jury to let them determine who it was who knew this much about the matter to be inquiring about such and such a package." After further discussion, the court directed that the jury be brought in, stating to defense counsel, "[y]ou make your objection when the time comes or you may make it now and it can stand, either way." We do not intend to give undue emphasis to formalistic matters as opposed to those of substance, but the fact is that no specific objection was made after the court made the above statement and at the time Cheek was on the stand his testimony about the telephone call went in without objection. Trial strategy sometimes dictates minimizing objections in the presence of the jury so that that body not receive the impression that counsel is attempting to keep something from the triers of fact.

### III.

■ Finally, appellant contends that the evidence presented at trial was insufficient to support his conviction on the counts charging the use of a communications facility to facilitate the importation of marijuana.

Appellant's argument is that he was an unknowing recipient of the marijuana sent through the mails; that he knew the packages were coming but thought they contained legitimate items such as books, tourist literature, and clothing.

The evidence presented at trial, however, supports the conviction and refutes appellant's protestations of ignorance and innocence. Appellant assiduously arranged for no less than seven persons to receive the packages from Nigeria at addresses other than his and in names other than his own. He informed many of the recipients that the packages were already en route. Additionally, he made numerous follow-up visits and calls to inquire if the packages had arrived, and specifically instructed several of the addressees not to open the packages once they arrived.

Upon learning that the contents of one of the packages had been discovered and turned over to Cheek, appellant told several persons that he would attempt to recover the package. He then made several inquiries to determine if investigators had come to Central Y.M.C.A. College concerning the package and to ascertain what the personnel at the college told the investigators. He also contacted

other addressees after the Y.M.C.A. incident and told them that they might receive packages containing marijuana and that they should deny knowing him.

This evidence is more than sufficient to support the jury's verdict, and, therefore, the district court properly denied appellant's motion for acquittal.

The judgments of conviction on all counts of the indictment for use of a communications facility to facilitate the importation of marijuana in violation of 21 U.S.C. § 843(b) are affirmed; the judgments of conviction on all counts of the indictment for importation of marijuana in violation of 21 U.S.C. § 952(a), with the exception of Count 10, are reversed; the judgment of conviction in Count 10 is affirmed.

Affirmed in part; reversed in part.