803 F.2d 722
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee
v.
JIMMY D. WEBSTER, JR., Defendant-Appellant.
 No. 86-5203.
 United States Court of Appeals, Sixth Circuit.
 Sept. 26, 1986.
 
 Before: KENNEDY and MARTIN, Circuit Judges; and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant Jimmy D. Webster, Jr. ("defendant") appeals his conviction on three counts of understating the adjusted gross income on certain of his individual tax returns and three counts of understating the total income on certain corporate tax returns. We find that venue was improper as to two counts of the indictment and so we remand for dismissal of those counts. We affirm the District Court's judgment in all other respects.
 
 
 2
 During the tax years at issue, defendant owned eighty percent of a small lamp manufacturing business, Stylecraft Lamps, Inc., in Nesbit, Mississippi. In October, 1980, Mary Edwards, an Internal Revenue Service ("IRS") agent, began an audit of defendant's personal and corporate tax returns for 1978, 1979 and 1980. Her investigation was suspended and a criminal investigation begun by Willie Childress, a Special Agent with the IRS. In the course of his investigation, Childress became aware of several cashier's checks that defendant had purchased at the bank where the business accounts were located. The cashier's checks were purchased with checks payable to the corporation that the corporation had received from customers for the sale of lamps. The customer's checks had never been deposited to the business account, leading Childress to suspect that they represented "unreported income." Defendant contends that those checks were used to purchase inventory for the corporation.
 
 
 3
 On March 12, 1985, defendant appeared before a federal grand jury, which returned an indictment charging him with six violations of 26 U.S.C. Sec. 7206(1).[1] Counts one, two and three charged defendant with willfully understating the "adjusted gross income" on his individual income tax returns for calendar years 1978, 1979 and 1980. Counts four, five and six charged him with understating the "total income" for the corporation for those years.
 
 
 4
 During discovery, the government produced 68 checks representing payment by customers for purchases from Stylecraft Lamps. The government contends that these checks represented specific items that defendant had "skimmed" out of the business for his personal benefit. Prior to trial, the parties stipulated that the 68 checks were payments for sales by the corporation and that none had been deposited to the corporation's bank account. On September 27, 1985, the jury returned a verdict of guilty on all six counts. On February 13, 1986, the United States District Court for the Western District of Tennessee entered a Judgment and Probation/Commitment Order. Defendant was assessed the costs of prosecution and was fined $5,000 on count one and $5,000 on count four. Sentence was suspended on the remaining counts and defendant was placed on probation for three years. Defendant was ordered to perform 200 hours of community service work within the first year of probation.
 
 
 5
 Defendant filed a timely appeal on February 18, 1986.
 
 I. VENUE
 
 6
 Defendant argues initially that the evidence was insufficient to establish venue with regard to the corporate tax returns.[2] Defendant resides in the Western District of Tennessee, where this case was tried. The corporation is located in Mississippi. It is undisputed that defendant filed his corporate tax returns with the IRS' office in Atlanta, Georgia.
 
 
 7
 In section 7206 cases, "[v]enue lies either where the tax return was made and subscribed or where it was filed." United States v. Nell, 570 F.2d 1251, 1256 (5th Cir. 1978).[3] Defendant contends that he made and subscribed the corporate returns in Mississippi and filed them in Georgia; accordingly, venue was improperly laid in Tennessee.
 
 
 8
 We note first that venue was properly laid in Tennessee for the 1979 corporate return. The government introduced into evidence the envelope that the 1979 return was mailed in. It listed defendant's home address in Memphis as the return address and was postmarked in Memphis. Defendant offered no evidence to refute this inference that the 1979 return was "made and subscribed" in Tennessee and so we find no grounds for reversal. Circumstantial evidence can be used to establish venue. Nell, 570 F.2d at 1256 (citation omitted).
 
 
 9
 We find that yenue was not properly laid in Tennessee as to the 1978 and 1980 returns. Testimony revealed that defendant's accountants prepared all three returns in Memphis. However, Michael Donato, the accountant who prepared the 1978 return, testified that he recalled taking the return to defendant at his plant in Mississippi because "[i]t was the last day to file the returns." Joint Appendix at 156. James Lenahan, defendant's other accountant, testified that he sent the returns that he prepared to defendant at his Mississippi plant. Id. at 217. Defendant testified that he signed the corporate returns in Nesbit, Mississippi and mailed them in Hernando, Mississippi "to the best that I can remember because both accountants brought them down to me." Id. at 274. The government failed to refute this evidence that the 1978 and 1980 tax returns had been made and subscribed in Mississippi. Accordingly, we find that venue was improper in Tennessee.
 
 
 10
 We reject the government's contention that defendant waived his right to raise this issue on appeal. This Court has stated that "[f]ailure to object in a timely fashion to venue until after completion of the government's case may constitute waiver." United States v. Fraser, 709 F.2d 1556, 1559 n.3 (6th Cir. 1983) (citations omitted). However, as the Seventh Circuit noted in United States v. John, 518 F.2d 705 (7th Cir. 1975):
 
 
 11
 The timing of the attack on venue is dependent upon whether the claimed lack of venue is apparent on the face of the indictment. It if is, appropriate objection must be lodged preferably prior to the commencement of trial but certainly before the close of the Government's case. Where the defect is not apparent on the face of the indictment, the objection may be timely raised in a motion for acquittal.
 
 
 12
 518 F.2d at 708-09 (citing United States v. Bohle, 445 F.2d 54, 58-59 (7th Cir. 1971)).
 
 
 13
 No lack of venue was present on the fact of the indictment. Defendant was charged with violating section 7206(1) "in the Western District of Tennessee" and that is where the trial commenced. Under these circumstances, defendant was under no objection to object to venue prior to trial; rather, he was entitled to await the government's case and to move when the government failed to prove that all of the elements charged to have taken place in the Western District of Tennessee did in fact occur there. See United States v. Gross, 276 F.2d 816, 819 (2d Cir.), cert. denied, 363 U.S. 831 (1960).
 
 
 14
 Because of our holding above, we need not address defendant's assertion that the District Court erred in refusing to instruct the jury that the Atlanta, Georgia, IRS office was not within the Court's jurisdiction. We remand to the District Court for entry of an order dismissing counts four and six of the indictment.
 
 II. SUFFICIENCY OF EVIDENCE
 
 15
 The second error alleged by defendant concerns the sufficiency of the evidence. Defendant was charged with willfully and knowingly making and subscribing tax returns which he did not believe to be true and correct, thereby understating his total income, in violation of 26 U.S.C. Sec. 7206(1). While defendant admits that he understated gross receipts since he did not report the customer checks which he cashed, he also asserts that he did not include the inventory which he bought with those receipts in cost of goods sold; thus he argues that the total income reported was correct. Defendant argues that in order for the government to show that he understated total corporate income, it must prove that he did not understate cost of goods sold to the same extent that he understated gross receipts.
 
 
 16
 Evidence of unexplained receipts is sufficient to establish a prima facie case of a taxpayer's failure to disclose substantial amounts of gross income. See United States v. Ballard, 535 F.2d 400, 405 (8th Cir.), cert. denied, 429 U.S. 918 (1976). Once the government has shown that gross receipts were understated, the taxpayer must then come forward with evidence of offsetting expenses, if any. Cf. United States v. Bell, 734 F.2d 1315, 1317 (8th Cir. 1984) (section 7203 case). Although the defendant did attempt to show that the cashed checks were used to purchase inventory, the jury did not believe him. We find no grounds to reverse the jury's determination.
 
 
 17
 Defendant also challenges the sufficiency of the evidence showing that he owed personal income taxes on the unreported checks. The government's contends that defendant "skimmed" the money out of the corporation and put it to his personal use. Thus, the government argues that not only did the corporation owe taxes on the income, but that it was income to defendant when he received it and so should have been included on his personal income tax return. We find the evidence sufficient to support defendant's conviction on these charges.
 
 III. LEADS DOCTRINE
 
 18
 Defendant alleges that the trial court should have directed a verdict on all counts as a result of the government's failure to investigate leads provided by defendant which, if substantiated, would have exonerated defendant. We disagree.
 
 
 19
 The leads doctrine originated in Holland v. United States, 348 U.S. 121 (1954), reh'g denied, 348 U.S. 932 (1955). The Supreme Court examined the net worth method used by the IRS in calculating unreported taxable income and stated:
 
 
 20
 When the Government rests its case solely on the approximations and circumstantial inferences of a net worth computation, the cogency of its proof depends upon its effective negation of reasonable explanations by the taxpayer inconsistent with guilt. Such refutation might fail when the Government does not track down relevant leads furnished by the taxpayer - leads reasonably susceptible of being checked, which, if true, would establish the taxpayer's innocence.
 
 
 21
 348 U.S. at 135-36.
 
 
 22
 The Holland Court was concerned about the onerous burden that circumstantial evidence might place on a taxpayer. Several circuits have examined the leads doctrine since and have determined that it has no application where the government's case rests on direct proof of specific items. See, e.g., United States v. Marabelles, 724 F.2d 1374, 1379 n.3 (9th Cir. 1984); United States v. Lawhon, 499 F.2d 352, 356-57 75th Cir.), reh'g denied, 502 F.2d 1168 (1974), cert. denied, 419 U.S. 1121 (1975); United States v. Suskin, 450 F.2d 596, 598 (2d Cir. 1971).
 
 
 23
 The government here was relying on specific items - the 68 checks that were not deposited to the business account. Thus, the leads doctrine has no applicability as far as the remaining counts are concerned. Accordingly, the Court need not address the parties' factual dispute over whether such leads were in fact furnished by defendant or investigated by the government.
 
 IV. ADMISSION OF CERTAIN TESTIMONY
 
 24
 Defendant also objects to the admission of certain testimony by Revenue Agent Mary Edwards. Edwards had begun a civil investigation and audit of defendant; her investigation was never completed because of the intervening criminal investigation. Nevertheless, the District Court allowed her to testify, despite repeated objections by defendant. We find that Edwards' testimony was properly admissible to show defendant's response (or lack thereof) to several pointed questions asked by Edwards, such as whether defendant bought inventory for cash or paid by check. Although Edwards never completed her investigation, her testimony regarding it was admissible to show the context in which the questions were asked. We suggest that a cautionary instruction to the jury would have been wise, but note that apparently no such instruction was requested. Accordingly, we find no error.
 
 V. INSPECTION OF SPECIAL AGENT'S REPORT
 
 25
 Defendant challenges next the District Court's refusal to order the government to produce the report prepared by Special Agent Childress during his investigation. The District Court reviewed the report in camera and found that it was not producible. This Court has also reviewed the report in camera. We find that even if the report should have been produced, the District Court's error, if any, in failing to order production, was harmless.
 
 VI. INTRODUCTION OF CERTAIN BANK RECORDS
 
 26
 Defendant objects to the District Court's decision to allow introduction of four checks into evidence by the government. (These checks are not among the 68 checks to which the parties had stipulated.)
 
 
 27
 Defendant objected to the admission of the checks at trial, claiming that they had not been produced at discovery. However, Special Agent Childress testified that he provided a stack of microfilmed bank records to defendant's attorney and accountant during a discovery meeting at his office. Childress testified that defendant's attorney did not appear to examine the records, which contained the four checks at issue. Joint Appendix at 297-99. Defendant's counsel stated at trial that he was told the stack contained defendant's personal bank records. He contends that these checks are not personal bank records and so he had no reason to check for their existence by going through the documents. Id. at 292.
 
 
 28
 The District Court found that the checks had in fact been produced during discovery. Id. at 302. The District Court's determination is not clearly erroneous. See Davis v. United States, 328 U.S. 582, reh'g denied, 329 U.S. 824 (1946); United States v. Gargotto, 510 F.2d 409, 411 (6th Cir. 1974), cert. denied, 421 U.S. 987, reh'g denied, 423 U.S. 884 (1975).
 
 
 29
 Moreover, we reject defendant's contention that there was no foundation for the admission of these checks. The District Court ruled that there was and we agree. Even if there was not sufficient foundation, the erroneous admission of four checks would not be sufficient grounds for reversal in light of the fact that the parties had stipulated to the admission of 68 similar checks. We find no error in the District Court's decision to allow introduction of the checks into evidence.
 
 VII.
 
 30
 Accordingly, the judgment of the District Court is reversed in part and affirmed in part, and the case is remanded for proceedings consistent with this opinion.
 
 
 
 [1]
 This section states:
 Any person who . . . [w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . shall be guilty of a felony ----
 26 U.S.C. Sec. 7206(1).
 
 
 [2]
 Defendant admits venue was proper as to the personal tax returns
 
 
 [3]
 The government is correct in noting that violation of section 7206 has been held to be a "continuous offense." United States v. Slutsky, 487 F.2d 832, 839 (2d Cir. 1973), cert. denied, 416 U.S. 937, reh'g denied, 416 U.S. 1000 (1974). However, the slutsky Court held that this fact means only that venue lies either where the return was made and subscribed or where it was filed. It does not mean that venue attaches wherever a return was made or signed, as the government contends