UNITED STATES of America, Appellant,

v.

Thomas Murphy DONAHUE, Appellee.

No. 75–1965.

United States Court of Appeals,
Eighth Circuit.

Submitted May 10, 1976.
Decided July 21, 1976.

Alan H. Kirshen, Asst. U. S. Atty., Sioux City, Iowa, for appellant; Evan L. Hultman, U. S. Atty., Sioux City, Iowa, on briefs.

Jack S. Nordby, St. Paul, Minn., for appellee.

Before VOGEL, Senior Circuit Judge, and HEANEY and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

This is an appeal by the government from a judgment of acquittal entered by the United States District Court for the Northern District of Iowa in favor of appellee, Thomas Murphy Donahue, hereinafter called defendant. The judgment was entered after a jury had found the defendant guilty on two counts of an eight-count indictment returned against him and Ronald Leigh Williams, and was based upon a motion for a judgment of acquittal made by defendant at the conclusion of all of the evidence in the case on which motion ruling had been reserved as authorized by Fed.R. Crim.P. 29(b).

Count 1 of the indictment charged in substance that between October 9, 1972 and October 10, 1973 the defendant and Williams unlawfully conspired (18 U.S.C. § 371) to violate the federal mail fraud statute (18 U.S.C. § 1341) and the federal wire fraud statute (18 U.S.C. § 1343), and that a number of overt acts were committed in order to effect the object of the alleged conspiracy.

In Counts 2, 3, 4 and 5 the defendant and Williams were charged with substantive violations of the mail fraud statute; and in Counts 6, 7 and 8 they were charged with substantive violations of the wire fraud statute.

The fraudulent scheme that the defendant and Williams were alleged to have devised was described in detail in Count 1, and the description was repeated in Counts 2 and 6. The scheme was that the defendant and Williams would represent to advertisers, including operators of motels and car rental services, that they were in a position to provide and for compensation would provide in airport terminals in various parts of the country, including the Northern District of Iowa, advertising display panels

equipped with direct line telephones so that potential customers might conveniently communicate with the advertisers, that defendant and Williams would sell such advertising while well knowing that they were not in a position to supply the panels and telephone services and with no intention of doing so and with the fraudulent intent of obtaining money from the advertisers by means of the alleged false statements, representations and promises. And it was further charged that the scheme contemplated use of the mails and of wire communications.

The defendant pleaded not guilty and was tried to a jury. Williams pleaded guilty and testified as a government witness.

At the conclusion of the government's case defendant moved for a judgment of acquittal. Ruling on the motion was reserved. The defendant did not testify and offered no evidence. He did renew his motion for judgment of acquittal and ruling on it was again reserved.

The case was submitted to the jury, and the defendant was convicted on Counts 1 and 8. He was found not guilty on the other counts.

The jury's verdict was returned on October 24, 1975. On November 12 the district court entered an order amounting to a memorandum opinion granting the defendant's renewed motion, and on November 19, 1975 the district court entered a formal judgment acquitting the defendant of all charges against him.

The government appeals from so much of that judgment as acquits the defendant of the charges contained in Counts 1 and 8. Appellate jurisdiction is predicated upon 18 U.S.C. § 3731, as amended in 1970. For reversal, the government argues that the jury's verdict on the counts just mentioned was sustained by law and the evidence, and that judgment in accordance with the verdict should have been entered.

The defendant contends that the final judgment of the district court is not appealable by the government. Alternatively, defendant argues that the ultimate action of the district court was proper, and that its judgment should be affirmed.

I

We take up, first, the question of jurisdiction.

As now written, 18 U.S.C. § 3731 provides that in a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment or order of a district court dismissing an indictment or information as to any one or more counts "except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution." The statute also provides that it is to be construed liberally to effectuate its purposes which were to clarify and broaden the government's right to appeal from adverse orders in criminal cases.

The present statute was considered exhaustively in *Serfass v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975); *United States v. Jenkins,* 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975); and *United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 214 (1975). This court considered it in some detail in *United States v. Means,* 513 F.2d 1329 (8th Cir. 1975), and it was recently before us again in *United States v. Lasater,* 535 F.2d 1041 (8th Cir. 1976).

If a district court erroneously terminates a criminal prosecution before jeopardy has attached to the defendant, the double jeopardy clause appearing in the fifth amendment to the Constitution presents no obstacle to an appeal by the government, and it makes no difference whether the action terminating the prosecution is denominated a "dismissal of the indictment" or whether it is called an "acquittal" or "judgment of acquittal." *Serfass v. United States* and *United States v. Lasater,* both *supra.*

If the termination takes place after jeopardy has attached, whether by reason of an abortion of the trial process or by reason of a final judgment on the merits in

favor of the defendant, the double jeopardy clause may or may not prohibit an appeal by the government. If the error of which the government complains can be corrected without a retrial of the defendant or a further factual inquiry going to the question of the defendant's guilt or innocence, the government can appeal; but if a further trial or factual inquiry would be necessitated by an appellate finding of error, then the double jeopardy clause prevents an appeal. *United States v. Jenkins; United States v. Wilson; United States v. Means,* all *supra.*

In *Means,* for example, the district court discharged the jury in the course of its deliberations on account of what the district court thought to be outrageous prosecutorial misconduct. The government sought to appeal. Correction of the error, if any, of the district court would manifestly have necessitated another trial of the defendant. It was held that the order of the district court was not appealable.

The situation here is that the jury found the defendant guilty, but the verdict of the jury was set aside, and a judgment of acquittal was entered. Speaking of that situation, the Supreme Court said in *Jenkins, supra,* 420 U.S. at 365, 95 S.Ct. at 1011:

> When a case has been tried to a jury, the Double Jeopardy Clause does not prohibit an appeal by the Government providing that a retrial would not be required in the event the Government is successful in its appeal. *United States v. Wilson, ante,* at 344–345, 352–353, 95 S.Ct. [1013] at 1022, 1026. When this principle is applied to the situation where the jury returns a verdict of guilt but the trial court thereafter enters a judgment of acquittal, an appeal is permitted. In that situation a conclusion by an appellate court that the judgment of acquittal was improper does not require a criminal defendant to submit to a second trial; the error can be corrected on remand by the entry of a judgment on the verdict. To be sure, the defendant would prefer that the Government not be permitted to appeal or that the judgment of conviction

not be entered, but this interest of the defendant is not one that the Double Jeopardy Clause was designed to protect.

*Jenkins* was followed in *United States v. DeGarces,* 518 F.2d 1156 (2d Cir. 1975), a case in which the district court had originally reserved ruling on a motion for a judgment of acquittal but sustained the motion after a verdict of guilty had been entered.

It does not necessarily follow from the fact that a verdict of guilty erroneously set aside is reinstated that the defendant's conviction is validated. He may still move for a new trial or he may appeal from an ultimate judgment of conviction on the basis of errors occurring in the course of the trial. Or, on remand the defendant may be able to contend that the evidence was insufficient to sustain the verdict if that question was not disposed of in connection with the government's appeal. Were the law otherwise a defendant would be better off if the verdict of the jury had not been set aside originally.

■ In the instant case the error, if any, of the district court in setting aside the jury's verdict on Count 1 and Count 8 can be corrected without a retrial of the defendant, and we conclude that we have jurisdiction of the appeal.

II

Turning now to the merits, we find it convenient first to consider the correctness of the district court's ruling as it applied to Count 8 of the indictment.

That count charged that on or about May 30, 1973 the defendant and Williams caused the manager of the Rodeway Inn at Sioux City, Iowa to make a long distance telephone call to the First National Bank of St. Paul, Minnesota, in which bank Williams had at one time had an account. It is clear to us that the call in question was made after the Rodeway Inn had paid for advertising that it did not receive and was simply an effort on the part of the manager of the Inn to recover his employer's money or at least to locate the defendant or Williams. We consider that *United States v. Maze,*

414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), cited by the district court, is in point, and we affirm the judgment of the district court on Count 8.

With respect to Count 1 the district court said:

> As to Count 1 it is the view of the court that taking all the evidence in the light most favorable to the government, as a matter of law it is insufficient to support the verdict. The object of the alleged conspiracy was to use the mail or wire to defraud. While the alleged overt acts need not be criminal in themselves, they must 'effect the object of the conspiracy.' 18 USC § 371. Of the 14 alleged overt acts, only 2 could reasonably be found to effect the object, and they took place either before the alleged conspiracy existed or after it was complete and reached its fruition. . . .

It will be observed that the district court did not find that there was no substantial evidence from which the jury could have found that the defendant and Williams conspired to defraud advertisers with the scheme necessarily contemplating the use of the mails or wire communication or that there was no substantial evidence from which the jury could have concluded that at least one of the acts alleged as overt acts was committed by one of the defendants. Rather, the district court seems to have been of the opinion that as a matter of law the acts charged in the indictment were not "overt acts" since they were not performed in order to effect the object of the conspiracy. We think that the district court took too narrow a view.

The mail fraud statute is a much older statute than the wire fraud statute; the latter was obviously patterned on the former, and the two are in *pari materia*. The mail fraud statute prohibits the use of the mails in furtherance of a fraudulent scheme, and the wire fraud statute prohibits the use of communications media, such as the radio, television, telephones and telegraph lines, in interstate or foreign commerce in furtherance of such a scheme.

In *Isaacs v. United States*, 301 F.2d 706, 725 (8th Cir.), *cert. denied*, 371 U.S. 818, 83 S.Ct. 32, 9 L.Ed.2d 58 (1962), this court said that the substantive offenses proscribed by the mail fraud and wire fraud statutes are closely related to the offense of conspiracy described in 18 U.S.C. § 371. There are, however, differences between a substantive violation of one of the statutes in question and a conspiracy to violate it. To start with, in order to constitute a conspiracy there must be at least two conspirators, and at least one overt act must be committed in furtherance of the conspiracy. In the second place, where a person is charged with a substantive violation of § 1341 or § 1343 it is not necessary for the government to prove that he intended to use the mails or other communications media in furtherance of his fraudulent scheme; it is sufficient if they were in fact used; but, where the charge is conspiracy to violate one of the statutes, the government must also show that the scheme contemplated the use of the medium in question. *Isaacs v. United States, supra,* and *Blue v. United States,* 138 F.2d 351 (6th Cir. 1943), *cert. denied,* 322 U.S. 736, 64 S.Ct. 1046, 88 L.Ed. 1570 (1944). *See also Fisher v. United States,* 324 F.2d 775 (8th Cir. 1963), *cert. denied,* 377 U.S. 999, 84 S.Ct. 1935, 12 L.Ed.2d 1049 (1964).

*Blue v. United States, supra,* was cited by this court with approval in both the *Isaacs* case and the *Fisher* case, *supra.* In *Blue* the court said, 138 F.2d at 360:

> Conspiracy to commit a crime is a different offense from the crime which is the object of the conspiracy. . . . The conspiracy may be accomplished without mailing a letter; and conspiracies to defraud by use of the mails are generally shown by circumstantial evidence. On a charge of conspiracy to violate the statute, the Government has to sustain a heavier burden of proof as to the intent of the conspirators—not only to defraud, but also to defraud by the use of the mails. . . .

■ While it was incumbent on the government in the instant case to allege and prove beyond a reasonable doubt that the defendant and Williams devised a fraudulent scheme and that the scheme contemplated the use of the mails or of wire communications, or both, we do not think that it was necessary to show as an overt act in furtherance of the conspiracy an actual use of either the mails or a wire communication.

■ As correctly observed by the district court an overt act performed in order to effect the object of a conspiracy may be perfectly innocent in itself. Obviously, the successful carrying out of a conspiracy to defraud by use of the mails or other communication medium may involve the commission of a number of acts of various kinds and having different purposes, and actual use of the medium in question may be a relatively minor part of the over-all scheme.

The overt acts charged in Count 1 of the indictment fall into two general categories, namely, the thirteen alleged overt acts set out in numbered paragraphs of Count 1, and the seven substantive offenses charged in the remaining counts of the indictment and incorporated into Count 1 by the reference appearing in the fourteenth numbered paragraph of that count.

No useful purpose would be served by listing all of the overt acts or commenting upon them in detail. Some of them were preparatory acts which conspirators might be expected to perform in connection with any fraudulent scheme designed to victimize a number of people or businesses and to be carried on for a substantial period of time. Others involved actual fraudulent misrepresentations and sales to advertisers. The acts charged as substantive offenses in Counts 2, 3, 4 and 5 involved actual mailings of letters, three of which contained checks payable to Aviation Display Systems which was one of the trade names allegedly used by the defendant and Williams. Since the acts charged in Counts 6 and 7, like the act charged in Count 8 with which we have already dealt, may well fall within the scope of *United States v. Maze, supra*, they may be ignored.

■ Putting to one side the acts mentioned in Counts 6–8, we are satisfied that at least some of the other acts alleged in the indictment would, if proven, qualify as "overt acts" under § 371.

We affirm the judgment of the district court as to Count 8; we reverse the judgment as to Count 1 and remand the case for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed in part and remanded.