**UNITED STATES of America, Appellee,**

v.

**Carolyn Porter FUEL, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Merle O. GREENE, Jr. and Julia Greene, Appellants.**

**Nos. 77–1876, 77–1896.**

United States Court of Appeals, Eighth Circuit.

Submitted May 15, 1978.

Decided Aug. 16, 1978.

Rehearing and Rehearing En Banc Denied Sept. 28, 1978.

---

Thomas Bradshaw, Asst. Federal Public Defender, Kansas City, Mo., for appellant, Carolyn Porter Fuel.

James R. Wyrsch, Kansas City, Mo., for appellants, M. O. Greene, Jr. and J. Greene.

Kenneth Josephson, Asst. U. S. Atty., Kansas City, Mo., for appellee; Ronald S. Reed, Jr., U. S. Atty., Kansas City, Mo., on brief.

Before HEANEY, BRIGHT and STEPHENSON, Circuit Judges.

HEANEY, Circuit Judge.

Merle O. Greene, Jr., Julia Greene and Carolyn Porter Fuel were charged in a ten-count indictment with mail fraud and conspiring to commit mail fraud in violation of 18 U.S.C. §§ 2, 371 and 1341. Greene and Julia Greene were convicted on all counts with which they were charged, and Fuel was convicted on all but one count with which she was charged.[1] The trial court subsequently entered a judgment of acquittal as to Julia Greene with respect to a substantive count. Each appellant raises several issues on appeal. For the reasons discussed below, we reverse each appellant's conviction for conspiracy and the convictions of Fuel on Counts III and IV. We affirm the appellants remaining convictions on the substantive counts.

### I. Factual Background.

Count I of the indictment charged the appellants with engaging in a conspiracy from January 1, 1973, until August 1, 1975, to defraud and obtain money from different insurance companies by submitting fraudu-

---

1. Julia Greene and Fuel were given concurrent two-year terms of imprisonment on each count. The sentences of imprisonment were suspended and they were each placed on probation for three years. Greene was given a two-year sentence of imprisonment on Count II. He was also given two-year sentences of imprisonment on each of the remaining counts with which he was convicted, but these sentences were suspended and Greene was given a three-year term of probation to run consecutively to the term of imprisonment.

lent claims on insurance policies in connection with automobile accident and burglary claims. During the pendency of the alleged conspiracy, Greene submitted eleven claims against nine insurance companies arising out of seven purported automobile accidents, two purported burglaries and one purported automobile larceny. He was paid approximately $15,328 by the insurance companies. During the same period, Julia Greene submitted four claims to four insurance companies arising out of three automobile accidents and one burglary. She was paid approximately $3,475 by the insurance companies. Fuel submitted five claims to four insurance companies arising out of four automobile accidents and one burglary. She was paid approximately $2,823 by the insurance companies.

Fraudulent medical reports, work-loss letters, receipts and vehicle repair estimates were submitted in support of some of the claims. The documentation used to support some of the later claims was a duplication of the documentation used to support earlier claims by one or more of the appellants. One of the insurance policies obtained by Greene had been obtained by misrepresentation. No question is raised as to the validity of some of the claims. The individuals submitting the claims were generally related to one another by blood or marriage. Julia Greene is the mother of Merle Greene, and Carolyn Porter Fuel is the cousin of Merle Greene's wife. Individuals submitting claims included Merle Greene's wife, brother, niece and children.

In the nine substantive counts, the appellants were charged with violation of the mail fraud statute by causing certain letters and reports to be mailed to insurance companies in connection with the fraudulent claims mentioned above. Greene was charged in Counts II, III, IV, V, VI, VIII and X; Julia Greene was charged in Counts IX and X; and Fuel was charged in Counts III, IV, VII and VIII.

The trial lasted a week and a half. Prior to trial, Fuel had filed a motion for severance which was denied. On September 12, the government began presenting evidence. It produced twenty-six witnesses and nearly two hundred exhibits. The government concluded its case-in-chief on September 19. At that time, motions for judgments of acquittal were filed by both the Greenes and Fuel. Fuel also filed a motion for severance. Fuel did not testify. She presented two witnesses for impeachment purposes and rested her case on September 19. Greene testified on his own behalf, but Julia Greene did not. The Greenes presented four witnesses and rested their case on September 20. At the close of all the evidence, each of the appellants again filed motions for judgments of acquittal, and Fuel again filed a motion for severance. The jury returned its verdict on September 21. It found all of the appellants guilty on Count I, the conspiracy count. It also found Greene guilty on Counts II, III, IV, V, VI, VIII and X (these counts involved $6,430); Julia Greene guilty on Counts IX and X (these counts involved no money); and Fuel guilty on III, IV and VII (these counts involved $1,368). It acquitted Fuel on Count VIII. The trial court denied the motion for severance and the motions for judgments of acquittal, except as to Count IX where it granted a judgment of acquittal as to Julia Greene. This appeal followed.

## II. *Sufficiency of the Evidence.*

Greene, Julia Greene and Fuel attack the sufficiency of the evidence supporting each of their convictions.[2] We view the evidence in the light most favorable to the verdict rendered, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Wofford,* 562 F.2d 582, 585 n. 1 (8th Cir. 1977), and take as established all reasonable inferences which tend to support the action of the jury. *United States v. Overshon,* 494 F.2d 894, 896 (8th Cir.), *cert. denied,* 419 U.S. 853, 95 S.Ct. 96, 42

---

**2.** Fuel did not waive her motion for a judgment of acquittal at the close of the government's case by presenting evidence as the evidence did not add to the government's case-in-chief. *Cephus v. United States,* 117 U.S.App.D.C. 15, 19, 324 F.2d 893, 897 (1963).

L.Ed.2d 85 (1974). It is well established that

circumstantial evidence does not differ in principle from direct evidence, and that in order for a jury to convict on circumstantial evidence it is not necessary that the evidence exclude every reasonable hypothesis except that of guilt but simply that it be sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty.

United States v. Shahane, 517 F.2d 1173, 1177 (8th Cir.), cert. denied, 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 124 (1975). See Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); United States v. Jackson, 549 F.2d 517, 529–530 (8th Cir.), cert. denied, 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977); United States v. Carlson, 547 F.2d 1346, 1360 (8th Cir. 1976), cert. denied, 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977). We have carefully reviewed the record with these principles in mind and have concluded that there is insufficient evidence to support the appellants' convictions on the conspiracy count, but that there is sufficient evidence to support Greene's convictions on Counts II, III, IV, V, VI, VIII and X; Julia Greene's conviction on Count X; and Fuel's conviction on Count VII.

### A. Conspiracy Count.

The indictment charged, and the government's position both at trial and on appeal, has been that the appellants were involved in a single conspiracy, over a thirty-three-month period, to defraud insurance companies. The evidence does not support this position. To prove the existence of a conspiracy, the government must establish the existence of an agreement between at least two conspirators to effect the object of the conspiracy, United States v. Jackson, supra at 530; United States v. Skillman, 442 F.2d 542, 547 (8th Cir.), cert. denied, 404

U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971), and that at least one overt act was committed in furtherance of the conspiracy. United States v. Donahue, 539 F.2d 1131, 1135 (8th Cir. 1976); Isaacs v. United States, 301 F.2d 706, 725 (8th Cir.), cert. denied, 371 U.S. 818, 83 S.Ct. 32, 9 L.Ed.2d 58 (1962). To convict an individual of conspiracy, it is not necessary for the government to prove that the individual knew all of the conspirators or was aware of all of the details of the conspiracy, but it is necessary to establish that the individual knowingly contributed to the furtherance of the conspiracy. United States v. Jones, 545 F.2d 1112, 1115 (8th Cir. 1976), cert. denied, 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977); United States v. Hester, 465 F.2d 1125, 1127 (8th Cir. 1972); Nassif v. United States, 370 F.2d 147, 152 (8th Cir. 1966).

In this case, the government simply failed to establish the existence of an agreement between the appellants to defraud insurance companies. In so holding, we recognize that an agreement need not be express or formal, United States v. Jackson, supra at 531, and that it may be established by circumstantial evidence. Id.; United States v. Hutchinson, 488 F.2d 484, 490 (8th Cir. 1973), cert. denied, 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219 (1974). Here, the government produced no statement or admission of the appellants which would indicate a common plan or agreement.[3] Nor did the government establish facts and circumstances from which the existence of an agreement could be inferred.

The government failed to establish that the alleged automobile accidents and burglaries either were "staged" or nonexistent. Thus, a conspiracy to defraud could only be proved by establishing that the appellants agreed to submit fraudulent documentation in support of any claim which might arise. We find insufficient evidence from which to

---

**3.** The government indicated in its opening statement that it would prove by Fuel's own admission that she was not involved in two of the automobile accidents for which she submitted claims. However, the trial court refused to permit the government to introduce Fuel's written admissions because of a possible

denial of the appellant's constitutional right of confrontation under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The trial court concluded that Fuel's admissions were voluntary and were made with full knowledge of her constitutional rights.

infer the existence of such an agreement. Initially, we note that it is difficult to understand how an agreement to defraud could exist that would only come into play at the happening of a fortuitous event—that is, the occurrence of an automobile accident or a burglary. Even if this hurdle is crossed, however, we are faced with the fact that the government also failed to establish that either Fuel or Julia Greene was aware that medical reports submitted on their behalf, or on behalf of others involved in the same accident, were fraudulent,[4] or that either of them knew that other documentation submitted with respect to automobile accident claims by Greene on his own behalf was fraudulent. While there is evidence to convict Fuel and Julia Greene on substantive counts of mail fraud in connection with respect to their individual burglary claims, there is no evidence of any knowledge or connection with the burglary claims of Greene.

In sum, the evidence shows that a number of related individuals, including the appellants, submitted a series of questionable insurance claims. That is not enough to satisfy the government's burden of proof and to sustain the jury's verdict. Guilt may not be inferred from "mere association." *United States v. Graham,* 548 F.2d 1302, 1312 (8th Cir. 1977); *United States v. Frol,* 518 F.2d 1134, 1137 (8th Cir. 1975). In order to sustain a criminal conviction, we must be convinced that the evidence does more than merely raise a suspicion or possibility of guilt. *United States v. Blunk,* 561 F.2d 111, 116 (8th Cir. 1977); *United States v. Jones, supra* at 1115. As we have held "[s]urmise cannot be permitted in a criminal case." *Id.* The evidence presented by the government is simply insufficient to establish beyond a reasonable doubt that the appellants knowingly engaged in a single overall conspiracy to defraud insurance companies.[5]

We can understand how the jury arrived at the result it did on the conspiracy count. A large chart, which has been duplicated and is attached hereto (Government's Exhibit No. 163), was prepared by the government and used by it during the course of the trial. In our view, this chart oversimplified the evidence. It tended to indicate an association where none was established. When the verbal testimony and the exhibits are carefully examined, the inference that the government sought to establish by use of the chart simply disappears.

The trial court was aware of the dangers inherent in the use of the chart and was concerned throughout the trial with the government's attempt to prove a conspiracy. He refused to permit the chart to be received as an exhibit and to be taken by the jury into the jury room. He did, however, with some reluctance, permit the chart to be used during the course of the trial. We cannot say that he abused his discretion in so doing, but we have no hesitancy in holding that when the record as a whole is examined, the existence of a conspiracy simply was not proved.

**B. Substantive Counts.**

██ The substantive offense proscribed by 18 U.S.C. § 1341, the mail fraud statute, is closely related to the offense of conspiracy set forth in 18 U.S.C. § 371. *United States v. Donahue, supra* at 1135; *Isaacs v. United States, supra* at 725. There are, however, differences between a substantive violation of the mail fraud statute and a

---

**4.** The government did establish by inference that Greene knew the medical records were fraudulent by establishing that Greene himself had written on the patient card submitted on behalf of his niece.

**5.** Nor do we feel that the government established the existence of separate conspiracies as to the submission of the accident and the burglary claims. There is not sufficient evidence to convince a fair minded jury beyond a rea-

sonable doubt that Fuel or Julia Greene participated in either conspiracy. Thus, we need not consider this case in light of the test for fatal variance established in *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), and its progeny. *See, e. g., United States v. Anderson,* 552 F.2d 1296 (8th Cir. 1977); *United States v. Butler,* 494 F.2d 1246 (10th Cir. 1974); *United States v. Varelli,* 407 F.2d 735 (7th Cir. 1969).

conspiracy to violate the statute.[6] Because of the differences, it is not necessarily inconsistent that a person be found guilty on the substantive counts but not on the conspiracy count. *Cf. United States v. West,* 549 F.2d 545, 553 (8th Cir.), *cert. denied,* 430 U.S. 956, 97 S.Ct. 1601, 51 L.Ed.2d 806 (1977). We must, however, carefully examine the strength of the evidence with respect to each of the substantive counts in order to insure that the appellants' convictions on the substantive counts are sufficiently supported and are not merely the result of evidence introduced with respect to the conspiracy count. *Cf. United States v. Anthony,* 565 F.2d 533, 538–539 (8th Cir. 1977).

In order to establish a violation of 18 U.S.C. § 1341, the government must prove the existence of a scheme to defraud and the mailing of a letter for the purpose of executing the scheme. *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435 (1954); *United States v. Cady,* 567 F.2d 771, 773 (8th Cir. 1977); *United States v. Brown,* 540 F.2d 364, 373 (8th Cir. 1976). Since the term "scheme" as used in § 1341, connotes some degree of planning by the perpetrator of the mail fraud, it is essential that the government establish an intent to defraud. *United States v. Nance,* 502 F.2d 615, 618 (8th Cir. 1974), *cert. denied,* 420 U.S, 926, 95 S.Ct. 1123, 43 L.Ed.2d 396 (1975). While the government must establish beyond a reasonable doubt that the appellants acted with an intent to defraud, *United States v. Williams,* 545 F.2d 47, 50 n. 2 (8th Cir. 1976), direct evidence of intent is not required. *United States v. Arnold,* 543 F.2d 1224, 1225 (8th Cir. 1976), *cert. denied,* 429 U.S. 1051, 97 S.Ct. 765, 50 L.Ed.2d 768 (1977). The requisite intent may be in-

ferred from all the facts and circumstances surrounding the appellants actions. *Id.; United States v. Nance, supra* at 618. Section 1341 "reaches schemes in which the defendant did not himself place any matter in the mails; it is sufficient to show that he 'caused' the mailings." *United States v. Calvert,* 523 F.2d 895, 903 (8th Cir. 1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976); *United States v. Brickey,* 426 F.2d 680, 684 (8th Cir.), *cert. denied,* 400 U.S. 828, 91 S.Ct. 55, 27 L.Ed.2d 57 (1970). The Supreme Court set forth the appropriate standard in *Pereira v. United States, supra* : "Where one does an act with knowledge that use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used." *Id.,* 347 U.S. at 8–9, 74 S.Ct. at 363.

We turn to a consideration of the sufficiency of the evidence with respect to each of the substantive counts.

### 1. Count II.

Greene was charged with causing his attorney to mail a fraudulent work-loss letter to Travelers Insurance Company with respect to a claim arising out of an accident, allegedly occurring on July 4, 1974. Travelers paid Greene $2,500 in settlement of his claim.

Greene provided his attorney with documentation in support of this claim, including a work-loss letter from Amoco oil. The attorney then mailed the documentation to Travelers. The work-loss letter was dated September 6, 1974, and stated that Greene had lost 108 hours of work as a result of the July 4, 1974, automobile accident. It was signed by "T. Noble." The fraudulent na-

---

**6.** Unlike conspiracy, a scheme to commit mail fraud may be conceived and executed by one person. *United States v. Donahue,* 539 F.2d 1131, 1135 (8th Cir. 1976); *Isaacs v. United States,* 301 F.2d 706, 725 (8th Cir.), *cert. denied,* 371 U.S. 818, 83 S.Ct. 32, 9 L.Ed.2d 58 (1962). Second, when a

> person is charged with a substantive violation of § 1341 * * * it is not necessary for the government to prove that he intended to use the mails * * * in furtherance of

his fraudulent scheme; it is sufficient if they were in fact used; but where the charge is conspiracy to violate [§ 1341], the government must also show that the scheme contemplated *the use of the medium in question. Isaacs v. United States, supra,* and *Blue v. United States,* 138 F.2d 351 (6th Cir. 1943), *cert. denied,* 322 U.S. 736, 64 S.Ct. 1046, 88 L.Ed. 1570 (1944).

*United States v. Donahue, supra* at 1135.

ture of the letter was established at trial through the testimony of two Amoco employees and through Amoco personnel records. Thomas Noble testified that he worked at Amoco at a desk next to Greene during the time period in question. He disclaimed any knowledge of the letter and stated that the signature on the letter was not his. He further stated that he would not have been authorized to sign such a letter in any case. The Amoco personnel records revealed that Greene was only absent from work for 13.5 hours during the relevant time period and that he received compensation for 4.5 of those hours. It was established that Travelers relied upon the work-loss letter in paying Greene $2,500 in settlement of his claim.

Greene contends that the government failed to establish the necessary intent to defraud because it did not establish by direct evidence that he either knew the letter was false or that he had prepared it himself.[7] He also contends that it was not established that a mailing in furtherance of the scheme was "caused" by Greene. Greene's contentions are without merit. Direct evidence of intent is not required, and a fraudulent intent on the part of Greene can clearly be inferred from his action in submitting the false work-loss letter. See United States v. Arnold, supra; United States v. Nance, supra. While Greene did not actually mail the false documentation, he did cause it to be mailed under the standard set forth by the Supreme Court in Pereira v. United States, supra. The mailing of the false documentation to Travelers by the attorney was clearly foreseeable and would be expected to follow in the ordinary course of business.

### 2. Count III.

Greene and Fuel were charged with causing their attorney to mail a demand letter accompanied by fraudulent medical reports concerning an alleged accident on October 22, 1974, to Farmers Insurance Group. The attorney represented both Greene and Fuel. He did not recall ever meeting Fuel. Fuel did sign the contract retaining the attorney and a medical authorization form for the attorney. She was not identified as having indorsed either the check or the release in connection with the settlement of her claim.

Claims arising out of the accident were submitted on behalf of six individuals, including Greene, his wife, his niece and Fuel. It was established that Farmers relied upon the fraudulent medical records provided in settling the claims for $1,000 each.

The medical records were purportedly prepared by Dr. L. Virgil Miller. In 1973, Dr. Miller had been declared incompetent and placed under guardianship. He continued, however, in practice. Greene testified that Miller had treated him for injuries arising out of the October 22 accident. Employees from Dr. Miller's office recalled seeing Greene, but not Fuel, at the office. An employee in Dr. Miller's office testified that the medical records submitted were not prepared in the office format or medical report style. A United States Postal Service document analyst testified that the reports had not been typed on the typewriters in Dr. Miller's office. He gave his expert opinion that Dr. Miller did not sign the reports, and that the reports had been signed by someone else in simulation of his handwriting. The document analyst could not eliminate the possibility that the signature on Fuel's medical report was not an "unnatural" signature of Dr. Miller caused by arthritis, old age or hardening of the arteries, conditions which Dr. Miller suffered from. He was positive, however, that the signature on Greene's medical report was not that of Dr. Miller. He was unable to identify the simulated signatures of Dr. Miller with anyone. The document analyst was, however, able to link Greene's writing to one of the reports. He testified that, with the exception of the word "released," all the writing on the pa-

7. Greene also contends that there was no evidence to show that Amoco's personnel records were necessarily accurate. However, he offered no evidence at trial that the records were

inaccurate. In reaching its verdict, the jury concluded that the records were accurate. We do not disturb that finding here.

tient card of Greene's niece had been done by Greene.

Both Greene and Fuel contend that the government failed to establish the necessary intent to defraud. After carefully examining the record, we are convinced that the government did present sufficient evidence from which the requisite fraudulent intent on the part of Greene could be inferred because of the identification of his writing with that on one of the medical reports submitted. The government did not present sufficient evidence, however, from which the requisite fraudulent intent could be inferred on the part of Fuel as it failed to establish she had any knowledge of the fraudulent nature of the medical reports.

### 3. *Count IV.*

Greene and Fuel were charged with causing their attorney to mail false medical reports, and an altered automobile repair estimate and bill, to Hertz Rental Company in connection with an alleged accident on February 10, 1975. The attorney had previously been retained in connection with the accident out of which Count III arose. The attorney did not recall meeting Fuel, but it was stipulated by the parties that she had retained the attorney. Eight individuals submitted claims arising out of the accident and Hertz paid $2,843 in claims. Fuel received $368 for medical expenses, and Greene received $221 for medical expenses and $209 for property damage. Fuel could not be identified as signing the settlement draft and release of her claim for $368.

Some of the medical reports were again purportedly signed by Dr. Miller. An employee from Dr. Miller's office testified that these reports were not of the format of reports prepared by that office. The United States Postal Service document analyst testified that the typewriting on the reports did not match the typewriting of the machines in Dr. Miller's office. He further testified that one of the medical reports submitted on behalf of Fuel did, however,

contain an authentic signature of Dr. Miller.

The automobile repair estimate submitted was from Major Cadillac for repairs on Greene's 1972 Cadillac. It was stamped paid in the amount of $1,364.53. The document analyst stated that the repair estimate was an alteration of a repair estimate of $1,364.53 from Major Cadillac submitted to American Family Insurance in connection with an accident occurring on December 11, 1974.[8] He further testified that another alteration of the same estimate was submitted by Greene to Cumis Insurance Company in another claim in connection with the February 10, 1975, accident. *See* discussion of Count V, *infra.*

There is ample evidence from which to infer the requisite fraudulent intent on the part of Greene through his contact with the attorney, the submission of the false medical reports and the submission of the altered repair estimate for his 1972 Cadillac. There is insufficient evidence to infer the requisite intent on the part of Fuel. She retained the attorney, but did not actively pursue the claim. She could not be identified as signing the settlement draft and the release of her claim. Moreover, the medical report submitted on her behalf does at least bear an authentic signature of Dr. Miller.

### 4. *Count V.*

Greene was charged with submitting an altered automobile repair estimate and bill to Cumis Insurance Company in connection with a claim arising out of the same accident in which the claims in Count IV allegedly arose. The claim was submitted by Greene, Julia Greene and Fuel to Cumis after receiving a settlement from Hertz. Cumis was Greene's insurance company.

As we have previously mentioned, the document analyst testified that the automobile repair estimate and bill for $1,364.53 that was submitted was an alteration of a document that had previously been sub-

---

8. None of the appellants were charged with respect to claims submitted in connection with the December 11, 1974, accident. Greene re-

ceived $2,450, Julia Greene received $1,400 and Fuel received $1,450 from American Family.

mitted in connection with other claims. Greene testified that he paid for the repairs with his Diners Club credit card. However, the records of the Diners Club only reveal a charge of $1,364.53 on his December, 1974, billing. That billing would correspond only to payment in connection with the December 11, 1974, accident and not with respect to the February 10, 1975, accident—out of which the claims forming the basis for Counts IV and V arose.

Again, there is sufficient evidence from which to infer the requisite intent on the part of Greene.

### 5. Count VI.

Greene was charged with mailing a certified letter to Farmers Insurance Company enclosing various receipts in support of his claim with respect to an alleged burglary at his residence on December 2, 1973.[9] Farmers paid out $2,500 with respect to the claim. Greene had previously submitted claims to Allstate Insurance Company with respect to a burglary at the same residence on January 1, 1973. Allstate paid Greene $4,780 in settlement of that claim. The document analyst testified that thirty-nine of the exhibits submitted by Greene in support of his claim with respect to the December 2, 1973, burglary were copies from the same original documents from which copies had previously been submitted by Greene to Allstate as documentation for his claim with respect to the January 1, 1973, burglary.

The requisite fraudulent intent can be inferred from the submission of documentation that was shown to be duplicated from that used in support of a prior burglary claim. The mailing by Greene of a certified letter satisfied the requirement of causing the use of the mails.

### 6. Count VII.

Fuel was charged with causing the General Adjustment Bureau to mail to Cumis Insurance Company a report with respect to

her claim arising out of an alleged burglary of her residence on February 6, 1975. The investigator from the General Adjustment Bureau testified that there was some evidence of the burglary.

Fuel gave the adjuster documentation in support of the claim, including a jewelry appraisal from Jaccard's Jewelry Store for a ring in the amount of $950 and a receipt from Woolf Brothers for $57.56. Both receipts were again used by Julia Greene in support of a subsequent claim against Allstate Insurance Company arising out of a burglary of her residence on April 23, 1975. An employee of Jaccard's testified that the appraisal form had been supplied to Julia Greene when she purchased a ring. The company records did not list a purchase by Fuel. In the claim submitted by Fuel, she stated that the burglary occurred at 3894 Chelsea. However, the Cumis policy she claimed against covered thefts from 3707 Prospect. The claim was withdrawn.

Fuel contends that the requisite fraudulent intent was not established and that the mailing of the report by the General Adjustment Bureau was not in furtherance of a scheme to defraud. We do not agree. The requisite intent can be readily inferred from the submission by Fuel of a claim for a ring that was not owned by her and for an address that was not covered by her insurance policy. Any inference that Fuel had received the ring from Julia Greene by gift or purchase was negated by the fact that Julia Greene subsequently submitted a claim for the same ring. Fuel admittedly did not place any matter in the mail herself. She did, however, "cause" the mailing of the report by the General Adjustment Bureau as such a report would be expected to result from her claim in the ordinary course of business. See *Pereira v. United States, supra,* 347 U.S. at 8–9, 74 S.Ct. 358; *United States v. Calvert, supra* at 903; *United States v. Brickey, supra* at 684.

**9.** Greene's landlord testified that a door window had been broken and that there was some evidence that a burglary might have occurred.

**7.** *Count VIII.*

Greene was charged with causing Turpin Associates to mail a letter to Cumis Insurance Company relating to an automobile larceny allegedly occurring on September 9, 1975. The claim was made against a homeowner's policy on 3108 East 63rd Street. Greene had stated that he had owned the property since 1970 when he obtained the policy. The policy was obtained by phone. Testimony established, however, that Greene only rented the property and that the owner had not authorized him to procure insurance. The claim was withdrawn. Greene contends that there was no foundation laid to establish that he was the person who called and obtained the policy and, thus, that the government failed to satisfy its burden of proof of a fraudulent scheme. This contention has little merit since Greene, in effect, acknowledged his application for the policy when he submitted the claim on the policy.

**8.** *Count X.*

Greene and Julia Greene were charged with causing an attorney representing Allstate to write a letter to Julia Greene demanding that she provide substantiation for her claim with respect to burglary of her residence occurring on April 23, 1975. Documentation provided to Allstate in support of the claim included receipts from Jaccard's Jewelry and Woolf Brothers which were copied from the same original and previously submitted by Fuel in support of her burglary claim, and a receipt from Stix, Baer & Fuller for the purchase of a television. Greene supplied Julia Greene with the Woolf Brothers receipt. The Stix, Baer & Fuller receipt was written out to Julia Greene. An employee of Stix, Baer & Fuller testified that the receipt was not in the correct form since it contained a false sales-man's number and because it was not the form of receipt used by the television department. The United States Postal Service document analyst testified that the Stix, Baier & Fuller receipt to Julia Greene was handwritten by Merle Greene.

The existence of fraudulent intent on the part of both Merle and Julia Greene can clearly be inferred from the use of duplicated and falsified receipts. There is also sufficient evidence to support an inference that the defendants "caused" matter to be mailed in furtherance of the scheme. The use of the mails was clearly foreseeable either by the insurance company, its agents or adjusters, or by an attorney employed by the company to handle the claim. *See Pereira v. United States, supra,* 347 U.S. at 8–9, 74 S.Ct. 358; *United States v. Minkin,* 504 F.2d 350, 353–354 (8th Cir. 1974), *cert. denied,* 420 U.S. 926, 95 S.Ct. 1122, 43 L.Ed.2d 396 (1975); *Fisher v. United States,* 324 F.2d 775, 780 (8th Cir. 1963), *cert. denied,* 377 U.S. 999, 84 S.Ct. 1935, 12 L.Ed.2d 1049 (1964).

**9.** *Conclusion.*

In summary, there is sufficient evidence to support Fuel's conviction on Count VII, Julia Greene's conviction on Count X and Greene's convictions on Counts II, III, IV, V, VI, VIII and X.

**III.** *Severance.*

■ Each of the appellants contends on appeal that they were so prejudiced by the joint trial as to require severance under Fed.R.Crim.P. 14.[10] A motion to sever is addressed to the sound discretion of the trial court, *United States v. Anthony, supra* at 538; *United States v. Jackson, supra* at 523, and a denial of severance will only be

---

**10.** The appellants do not contest their initial joinder under Fed.R.Crim.P. 8. This Court has held that,

> [i]t is permissible and also customary to join a conspiracy count with separate substantive counts, *Pegram v. United States,* 361 F.2d 820, 821 (8th Cir. 1966); 1 C. Wright, *Federal Practice and Procedure* § 144, at 330 (1969), even though some of the alleged co-conspira-

tors are not charged in the substantive counts. *United States v. Leach,* 429 F.2d 956, 960 (8th Cir. 1970), *cert. denied,* 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151 (1971); *Wangrow v. United States,* 399 F.2d 106, 109–10 (8th Cir.), *cert. denied,* 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270 (1968).

*United States v. Graham,* 548 F.2d 1302, 1310 (8th Cir. 1977).

grounds for reversal if "the appellants can show such clear prejudice that it indicates an abuse of the trial court's discretion." *United States v. Anthony, supra* at 538. We find no abuse of discretion here.

In considering a motion to sever, the trial court must balance the inconvenience and expense of separate trials against the prejudice to the codefendants in a joint trial. *See United States v. Wofford, supra* at 585. Individuals charged in a conspiracy are usually tried together, particularly where the proof of the charges is based upon the same evidence and acts. *See, e. g., United States v. Jackson, supra* at 523; *United States v. Graham, supra* at 1310; *United States v. Kirk*, 534 F.2d 1262, 1269 (8th Cir. 1976), *cert. denied*, 433 U.S. 907, 97 S.Ct. 2971, 53 L.Ed.2d 1091 (1977); *United States v. Hutchinson, supra* at 492. As we have stated, "[t]his rule reflects a strong desire to avoid multiple litigation and conserve judicial resources since proof of guilt is often based on the same evidence. Thus, the appellants have a heavy burden in showing that the trial court abused its discretion." *United States v. Anthony, supra* at 538 (footnote omitted).

The appellants contend they were prejudiced by the joint trial because it was impossible for the jury to compartmentalize the evidence and because the evidence against Greene was stronger than the evidence against Fuel or Julia Greene. We recognize that there is an inherent danger in a joint trial that the jury will convict on the basis of the cumulative evidence produced at trial, rather than on the basis of the quantum of evidence relating to each defendant. *United States v. Anthony, supra* at 538; *United States v. Graham, supra* at 1310. However, a defendant is not automatically entitled to severance because the evidence against a codefendant is more damaging than the evidence against him. *United States v. Anthony, supra* at 538; *United States v. Jackson, supra* at 525.

Here, the trial court carefully instructed the jury that it should weigh the evidence against each defendant individually, and that

it is your duty to give separate, personal consideration to the case of each individual defendant. When you do so, you should analyze what the evidence in the case shows with respect to that individual, leaving out of consideration entirely any evidence admitted solely against some other defendant or defendants. Each defendant is entitled to have his or her case determined from the evidence as to his own acts and statements and conduct, and any other evidence in the case which may be applicable to him.

While the evidence presented at trial was complex and confusing, the trial court could reasonably have believed that the jury was capable of compartmentalizing the evidence. The fact that it failed to do so with respect to some of the grounds is insufficient justification for us to now hold that the trial court abused its discretion in denying severance. There is, moreover, clear and convincing probative evidence implicating each of the appellants on certain of the substantive counts. We are unable to agree with the appellants that they were convicted on the evidence accumulated against all of them. *See United States v. Graham, supra* at 1311.

### IV. *Evidentiary Rulings.*

### A. *Evidence of Other Insurance Claims.*

 Each of the appellants objects to the admission of evidence relating to insurance claims which were not alleged in any of the substantive counts or any of the overt acts of the conspiracy count. The appellants particularly object to the use of the chart reproduced and attached hereto (Government's Exhibit No. 163). *See* Part II, A, *supra*. The trial court has broad discretion in determining the relevance of proposed pieces of evidence, *United States v. Williams*, 545 F.2d 47, 50 (8th Cir. 1976); *United States v. Johnson*, 516 F.2d 209, 214 (8th Cir.), *cert. denied*, 423 U.S. 859, 96 S.Ct. 112, 46 L.Ed.2d 85 (1975), and the admission of such evidence will only be grounds for reversal if the trial court abused its discretion. *United States v. Kills Crow*, 527 F.2d 158, 160 (8th Cir. 1975). We find no abuse of discretion on this record.

Evidence was admitted with respect to claims as to eight automobile accidents, four burglaries and one automobile larceny. Substantive counts were based upon claims filed with respect to three of the accidents, three of the burglaries and the one automobile larceny. Evidence as to the remaining claims was admissible under Fed.R.Evid. 404(b) to establish knowledge and fraudulent intent. *See* 2 J. Weinstein and M. Berger, WEINSTEIN'S EVIDENCE ¶ 404[09] (1977). Evidence with respect to Greene's January 1, 1973, burglary claim was relevant to show that thirty-nine receipts submitted with respect to that claim were later submitted with respect to Greene's claim arising out of the December 2, 1973, burglary. Evidence as to the December 11, 1974, automobile accident was needed to establish that an automobile repair estimate submitted with respect to that accident was also later used in support of claims arising out of the February 10, 1975, automobile accident. The remaining automobile accident claims were used to establish that Greene had obtained insurance by misrepresentation and to help establish a recurrent pattern of claims.

B. *Admission of Exhibits Nos. 62, 177, 182 and 184.*

█ Fuel objects to the admission of Exhibits Nos. 62, 177, 182 and 184. Each of the exhibits were copies of receipts provided by Fuel to an insurance adjuster in connection with her February 6, 1975, burglary claim. The trial court initially refused to admit the exhibits because red markings had been placed on the exhibits in connection with the submission of the exhibits to a document analyst. "White-out" was placed over the red markings and the government reoffered the exhibits. Since the background paper was also white, the prominence of the markings was reduced. The trial court carefully instructed the jury to disregard the markings. We have examined these exhibits and cannot say that the trial court abused its discretion in admitting these exhibits.

C. *Production of Expert's Notes.*

█ The Greenes contend that they were entitled to the production of the documents and rough notes of the government's expert witness, a United States Postal Service document analyst, under the Jencks Act. 18 U.S.C. § 3500 and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This contention is without merit. The government provided defense counsel with the expert's reports prior to trial. The trial court denied the motion for additional discovery after being informed that the expert does not use notes and, instead, dictates his findings directly.

V. *Jury Instructions.*

A. *Fuel's Requested Instruction No. 46.*

█ Fuel contends that the trial court erred in refusing to give her requested Instruction No. 46. A defendant is entitled to an instruction on his theory of the case, but only if it is properly requested and there is evidence to support the theory. *United States v. Brown, supra* at 380; *United States v. Nance, supra* at 619. Moreover, even if the instruction is proper, the trial court retains discretion in framing the instructions and there is no error if the trial court's instruction adequately covers the substance of the requested instruction. *United States v. Brown, supra.*

The requested instruction stated that Fuel suffered legitimate injuries from the automobile accidents and a legitimate property loss as a result of the burglary of her residence. It further stated that she submitted legitimate insurance claims with respect to those losses. Fuel did not testify and there is no testimony beyond her plea of not guilty to support these contentions. Accordingly, the trial court did not abuse its discretion in refusing to give that portion of the requested instruction.

The trial court did instruct the jury that every defendant has a right to have his theory of the case considered and that a plea of not guilty requires the government to prove all essential elements of its case beyond a reasonable doubt. It also in-

structed the jury that it should "consider with care the theories of defense as stated by defense counsel in closing argument." These instructions adequately cover the substance of the remaining portions of Fuel's requested instruction.

B. *Instruction on Circumstantial Evidence.*

■ The Greenes argue that it was plain error for the trial court to have failed to instruct the jury that to support a conviction on circumstantial evidence, the evidence must be inconsistent with every reasonable hypothesis of innocence. We cannot agree. Circumstantial evidence is intrinsically as probative as direct evidence. *Holland v. United States, supra,* 348 U.S. at 139–140, 75 S.Ct. 127; *United States v. Scholle,* 553 F.2d 1109, 1118 (8th Cir. 1977), *cert. denied,* 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1978). Since the Supreme Court's opinion in *Holland,* this Circuit has held that "instructions that circumstantial evidence alone affords a basis for conviction only if the evidence is completely inconsistent with innocence are now considered confusing and incorrect and the better rule is merely to instruct on the standards of reasonable doubt." *United States v. Fryer,* 419 F.2d 1346, 1350 (8th Cir.), *cert. denied,* 397 U.S. 1055, 90 S.Ct. 1399, 25 L.Ed.2d 672 (1970).

C. *Instruction on Coconspirator's Statements.*

■ The Greenes contend that it was plain error for the trial court to give a cautionary instruction to the jury which permitted the jury to weigh the admissibility of the coconspirators' statements. This Circuit has recently held that Fed.R.Evid.

104(a) requires that questions of the admissibility of coconspirators' hearsay statements be determined by the trial court and, thus, that the jury no longer has a role in weighing the admissibility of such statements. *United States v. Macklin,* 573 F.2d 1046, 1048 (8th Cir. 1978); *United States v. Bell,* 573 F.2d 1040, 1043 (8th Cir. 1978). However, this case was tried before our decisions in *Macklin* and *Bell* which are to be applied only prospectively. In the absence of an appellate decision on point, we cannot say that the cautionary instruction constituted plain error. *See United States v. Smith, et al.,* 578 F.2d 1227, 1233 (8th Cir. 1978).

D. *Instructions as to Discussion of the Case.*

■ The Greenes finally contend that the trial court failed to fully instruct the jury at each recess that they should not read or talk about the case. This contention is without merit. The trial court did sufficiently admonish the jury not to read about or discuss the case. *See United States v. Miles,* 483 F.2d 1372, 1374 n.2 (8th Cir. 1973), *vacated on other grounds,* 415 U.S. 970, 94 S.Ct. 1553, 39 L.Ed.2d 867 (1974).

VI. *Conclusion.*

We reverse the conviction of Merle Greene on Count I and affirm his convictions on Counts II, III, IV, V, VI, VIII and X. We reverse the convictions of Julia Greene on Count I and affirm her conviction on Count X. We reverse the convictions of Carolyn Porter Fuel on Counts I, III and IV and affirm her conviction on Count VII.

Appendix to follow

# APPENDIX

GOVERNMENT'S EXHIBIT NO. 163

| Accident Date | Claimant Name | Claim Paid ($) | Claim DEMAND | Police Report | Vehicle Type | Accident Location | Vehicle Repair | Ins. Co. Claim No. |
|---|---|---|---|---|---|---|---|---|
| April 24, 1973 | William Gardenhire<br>Sheri Victor<br>Merle Greene, Jr. | 100.00<br>—<br>353.83 | 100.00<br>—<br>353.83 | NONE | 1965 Olds. | 73rd & Wornall | <br><br>353.83 | Amer. States A–292529 |
| April 11, 1974 | Merle Greene, Jr.<br>Winston Dillard | 1,315.00<br>— | 1,315.00<br>— | At Scene | 1973 Chev. | 62nd & Sw. Pkwy. | — | Farmers Ins. 1429668389 |
| July 4, 1974 | Merle Greene, Jr.<br>Julia Greene<br>Sandra Greene<br>Melvin Greene<br>William Gardenhire | 2,500.00<br>1,750.00<br>2,500.00<br>1,150.00<br>— | 3,250.00<br>2,750.00<br>2,750.00<br>1,650.00<br>— | Walk in Report | 1965 Olds | 63rd & Paseo | 710.00 | Travelers Ins. Co. 077ABA–633083 |
| October 22, 1974 | Merle Greene, Jr.<br>Carolyn Porter (Fuel)<br>Sandra Greene<br>Frances Greene<br>Delores Santiago<br>Demonica Santiago<br>Zenette Pearson | 1,000.00<br>1,000.00<br>1,000.00<br>1,000.00<br>1,000.00<br>1,000.00<br>— | 1,750.00<br>1,850.00<br>1,750.00<br>1,750.00<br>1,850.00<br>1,850.00<br>— | Walk in Report | 1973 Chev. | 63rd & Troost | — | Farmers Ins. Grp. 1429668389 |
| December 11, 1974 | Merle Greene, Jr.<br>Julia Greene<br>Carolyn Fuel<br>Sandra Greene<br>Delores Santiago<br>Frances Greene<br>William Gardenhire | 2,450.00<br>1,400.00<br>1,455.00<br>2,450.00<br>1,400.00<br>1,600.00<br>— | 3,500.00<br>2,300.00<br>2,300.00<br>3,250.00<br>2,300.00<br>3,000.00<br>— | Walk in Report | 1972 Cadd. | 24th & Holmes | 1,364.53 | American Family M–88761 |
| February 10, 1975 | Merle Greene, Jr.<br>Julia Greene<br>Carolyn Fuel<br>Sandra Greene<br>Frances Greene<br>Delores Santiago<br>Merle Greene III<br>Wanda Minor<br>James Roundtree—(AKA —Jaimie Nixon) | 430.00<br>325.00<br>368.00<br>430.00<br>325.00<br>325.00<br>325.00<br>315.00 | 3,610.00<br>1,750.00<br>1,900.00<br>2,250.00<br>1,750.00<br>1,700.00<br>1,750.00<br>1,700.00 | Walk in Report | 1972 · Cadd. | I–435 & 63rd St. | 1,364.53 | Hertz Rental & Cumis Ins.<br><br><br>4–31603 |
| June 5, 1975 | Carolyn Porter (Fuel)<br>Delores Santiago<br>Wanda Minor<br>Ewing Minor<br>Gerald Porter<br>Demonica Santiago<br>Rita (Lamelle) Nixon | – 0 – | · <br><br><br>– 0 – | Walk in Report | 1972 Cadd. | 22nd & Holmes | 1,494.37 | American Family & State Farm<br>—<br>M89459 |
| June 6, 1975 | Merle Greene, Jr.<br>Sandra Greene<br>Merle Greene III<br>Shirley Lamelle<br>Rita Lamelle (Nixon)<br>Robin Fuel<br>David Hughes | – 0 – | – 0 – | At Scene | 1972 Cadd. | Swope Pkwy. & Meyer | — | State Farm 25–4177–075 |
| | BURGLARY/LARCENY CLAIMS: | $ | $ | | | | | |
| 1/ 1/73 | MERLE GREENE, Jr. | 4,780.00 | 7,180.00 | Burg. | | 3108 E. 63rd | | ALLSTATE 10E50456 |
| 12/ 2/73 | MERLE GREENE, Jr. | 2,500.00 | 28,800.00 | Burg. | | 3108 E. 63rd | | FARMERS 20866389 |
| 2/ 6/75 | CAROLYN FUEL | (withdrawn) – 0 – | 11,400.00 | Burg. | | 3894 Chelsea | | CUMIS HO952458 |
| 4/23/75 | JULIA GREENE | (withdrawn) – 0 – | 6,500.00 | Burg. | | 3110 E. 63rd | | ALLSTATE 10G60936 |
| 9/ 9/75 | MERLE GREENE, Jr. | (withdrawn) – 0 – | 7,700.00 | Larc. | | L.A. Calif. | | CUMIS H69990 |