**UNITED STATES of America**

v.

**Daniel J. TURLEY, Appellant.**

**No. 89–5302.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Nov. 27, 1989.

Decided Dec. 6, 1989.

Rehearing Denied Mar. 2, 1990.

---

James J. West, U.S. Atty., Kim Douglas Daniel, Asst. U.S. Atty., Harrisburg, Pa., for appellee.

Thomas Colas Carroll, Philadelphia, Pa., for appellant.

Before SLOVITER and BECKER, Circuit Judges, and LIFLAND, District Judge [*].

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

#### Facts

Daniel Turley, who was convicted following a jury trial on one count of conspiracy to commit mail fraud in violation of 18 U.S.C. § 371 and four substantive counts of mail fraud in violation of 18 U.S.C. § 1341, appeals the denial of his post-verdict motions for judgment of acquittal, arrest of judgment, or a new trial.

At all times relevant to this case, Turley was employed as co-manager of the Wayne Agency for the Equitable Life Assurance Society of the United States. The Wayne Agency had its headquarters in Wayne, Pennsylvania, a town in the Eastern District of Pennsylvania, with district offices in Bloomsburg and Northumberland, Pennsylvania, both in the Middle District of Pennsylvania. The district managers of these two offices were E.P. Miller and Jeffrey Fedder, respectively.

Equitable was in the business of selling, inter alia, a life insurance program denominated "equi-sur-plus" (ESP) designed for owners and employees of businesses who paid for the premium through payroll deductions. Once Equitable received payment for the first month's premium on any ESP insurance order, the generating sales agent received his/her full commission for the year. Both the district manager and the agency manager also received a commission from the sale of ESP insurance.

The conspiracy at issue, which was masterminded by Miller and Fedder, consisted of a scheme to submit to Equitable fictitious applications for ESP insurance from real businesses or from totally fictitious customers. The sales agents who were involved prepared applications for insurance from fictitious customers, fronted the first month's premium with their own money, and submitted the applications to the agency office in Wayne. The applications were then mailed from the agency office in Wayne to the home office in Columbus, Ohio. When the policies went into default and Equitable charged back the commissions paid to the salesmen and others who shared in them, new fictitious applications were submitted on which, once again, the yearly commissions were advanced. The existence of the scheme is conceded.

The scheme began in 1981 but Turley joined the conspiracy in the beginning of 1984. Viewing the evidence in the light most favorable to the government, which received the verdict, there is ample evidence that Turley encouraged sales agents, primarily in the Bloomsburg and Northumberland district offices, to prepare the false applications. The substance of his participation is not at issue in this appeal, and Turley does not contend that the evidence was insufficient to support the verdict.

### II.

#### Conspiracy to Commit Mail Fraud

Turley contends first that Count 1 of the indictment charging the conspiracy is insufficient because it did not allege a specific agreement to use the mails, and that the court compounded this error in its jury instructions. Turley contends that the government must allege and prove an

___

[*] Hon. John C. Lifland, United States District Court for the District of New Jersey, sitting by designation.

agreement to use the mails before there can be a mail fraud conspiracy violation.

■ Initially, the government contends that the indictment does sufficiently allege an agreement to use the mails in furtherance of the conspiracy, noting that the indictment should be construed liberally in favor of the government because Turley did not raise this challenge until after the government presented its case-in-chief. As the government argues, an indictment is sufficient if it adequately informs the defendant of the charges against him. *United States v. Olatunji*, 872 F.2d 1161, 1166 (3d Cir.1989). We agree with the district court that reading the indictment in its entirety, it sufficiently alleges a scheme contemplating use of the mails.

We turn to the more crucial argument, *i.e.*, whether the government must prove an actual agreement to use the mails in furtherance of the scheme to defraud. This court has not directly addressed this issue. There are Courts of Appeals decisions which suggest a split among the circuits.[1] In *United States v. Donahue*, 539 F.2d 1131 (8th Cir.1976), the Eighth Circuit reiterated its support of the Sixth Circuit's earlier decision in *Blue v. United States*, 138 F.2d 351 (6th Cir.1943), *cert. denied*, 322 U.S. 736, 64 S.Ct. 1046, 88 L.Ed.2d 1570 (1944), which held that while the government need only show that the mails were used in cases of substantive mail fraud, when the charge is conspiracy to commit mail fraud, "the government must also show that the scheme contemplated the use of the medium in question." *Donahue*, 539 F.2d at 1135.

It is of note, however, that subsequent to the *Donahue* case, the Sixth Circuit repudiated its holding in *Blue* in *United States v. Reed*, 721 F.2d 1059, 1060–61 (6th Cir.1983). In *Reed*, the Sixth Circuit held that *Blue* was no longer good law in light of the decisions of the Supreme Court in *Pereira v. United States*, 347 U.S. 1, 74 S.Ct. 358,

98 L.Ed. 435 (1954), and *United States v. Feola*, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975). In *Pereira*, the Court held that the only intent necessary for substantive mail fraud violations is that the use of the mails can reasonably be foreseen. Thereafter, in *Feola* the Court enunciated the general rule that the government need not prove a higher degree of criminal intent in a conspiracy case than required by the substantive offense. Applying these cases, the Sixth Circuit held in *Reed* that the government does not have to prove an explicit agreement to use the mails in furtherance of the conspiracy. Instead, "what the government must show ... is an agreement to defraud plus knowledge that the use of the mails was reasonably foreseeable." 721 F.2d at 1061.

Similarly, in *United States v. Craig*, 573 F.2d 455 (7th Cir.1977), *cert. denied*, 439 U.S. 820, 99 S.Ct. 83, 58 L.Ed.2d 110 (1978), the court rejected the contention also asserted here by Turley, that if the government were not required to prove a specific agreement to use the mails, the essence of mail fraud would be ignored in conspiracy cases. Instead, the court held that mailings are the jurisdictional element of mail fraud and that a conspirator's knowledge of the federal jurisdictional element is not a necessary element of a conspiracy to commit mail fraud. *Id.* at 486.

■ Although this court has not addressed the precise issue in the case at bar, we have in another context adopted the view that knowledge of the jurisdictional element is not necessary in order to convict. *See United States v. Iannelli*, 477 F.2d 999, 1002 (3d Cir.1973), *aff'd on other grounds*, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). The government argues that this court has also adopted the view of the Sixth and Seventh Circuits that a conspiracy to commit mail fraud does not require a specific agreement to use the

---

1. Turley cites as support for his position the United States Attorney's Manual Sec. 9–43.740 advising U.S. Attorneys to include in a mail fraud indictment the charge that the defendants conspired to use the mails. The Manual is not precedent for the courts and provides dubious support. As long as some courts appear to require such language in the indictment, one would expect the Justice Department to advise its attorneys to include such language as a precaution.

mails when we affirmed without opinion the judgment of the district court in *United States v. Thomas*, 686 F.Supp. 1078 (M.D.Pa.1988), *aff'd* 866 F.2d 1414, (3d Cir. 1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1958, 104 L.Ed.2d 426 (1989). Even if the dicta contained in *Thomas* were applicable to a conspiracy charge, our Internal Operating Procedures make clear that only published opinions of this court are regarded as precedential. Third Circuit I.O.P. Ch. 5 § A.2.

■ We therefore address for the first time whether an agreement to use the mail is an essential element of mail fraud and conclude, along with the two other circuits, that it is not. We base our holding primarily on the reasoning applied by the Supreme Court in *Feola*. In that case, where the Court considered the scienter required to sustain a conspiracy charge, the Court held that in order to convict a defendant for conspiring to assault a federal officer under 18 U.S.C. § 111, the government did not have to prove the offenders knew that the person they were assaulting was, in fact, a federal officer. In so holding the Court rejected the line of lower court cases that held that there was a higher scienter requirement for conspiracy offenses than for the substantive offense.

The reasoning in *Feola* is instructive. Turley argues that if conspiracy to commit mail fraud can be proven merely by showing that the use of the mails was reasonably foreseeable, "this formulation largely does away entirely with the use of the mails as a factor in mail fraud conspiracy and reduces that charge to a simple agreement to defraud." Brief for Appellant at 14. In *Feola*, the Court rejected the analogous argument. Looking to the purpose of the law of conspiracy, the Court stated, "[t]hat individuals know that their planned joint venture violates federal as well as

state law seems totally irrelevant to that purpose of conspiracy law which seeks to protect society from the dangers of concerted criminal activity." *Feola*, 420 U.S. at 693, 95 S.Ct. at 1268. Because use of the mails is merely the jurisdictional element by which a state fraud offense is turned into the federal crime of mail fraud, we hold that specific intent to use the mails need not exist as an essential element of the scheme and that the intent adequate to prove the substantive offense, *i.e.*, if the use of the mails "can reasonably be foreseen, even though not intended," *Pereira v. United States*, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954), is also sufficient to prove a conspiracy to commit mail fraud.

## III.

### Venue

■ Turley's next contention is that venue on the four substantive mail fraud counts was improper in the Middle District of Pennsylvania and that accordingly we should dismiss these charges. Under the mail fraud statute, 18 U.S.C. § 1341,[2] venue is appropriate in the district where the letter was placed in the mail, where the defendant took or received the letter from the mail, or where the defendant "knowingly causes [the letter] to be delivered by mail, according to the direction thereon." 18 U.S.C. § 1341 (1982).

In this case, the material in question was mailed in the Eastern District of Pennsylvania and received in the Southern District of Ohio. Thus, venue in the Middle District of Pennsylvania can only be established if Turley's actions in that district can be said to have "knowingly caused" the material "to be delivered according to the direction thereon." The government's indictment pleaded that Turley's actions in the Middle District of Pennsylvania caused Equitable to place bogus ESP life insurance applica-

---

**2.** The government concedes that 18 U.S.C. § 3237, which provides that in cases where the offense was begun in one district and completed in another venue may be laid in any district through which the offense was continued, is not applicable to mail fraud. Relying on the decision of the Supreme Court in *Travis v. United States*, 364 U.S. 631, 636–37, 81 S.Ct. 358, 361–

62, 5 L.Ed.2d 340 (1961), that "venue should not be made to depend upon the chance use of the mails, when Congress has so carefully indicated the *locus* of the crime," the government acknowledges that cases applying the general venue statute were wrongly decided. Brief of Appellee at 34.

tions in an authorized depository in Wayne (Eastern District of Pennsylvania) to be delivered by the Postal Service according to the direction thereon to Equitable in Columbus, Ohio.

This court approved a causation theory of venue in *United States v. Goldberg*, 830 F.2d 459 (3d Cir.1987), where the defendant from a prison telephone in the Eastern District of Pennsylvania caused the wire transfer of funds that did not begin in, end in, or pass through the Eastern District. Venue was deemed appropriate in the Eastern District on the theory that it was in that district "where he executed the measures which caused the offenses to be consummated." *Id.* at 465.

Turley, stressing the "caused to be delivered" language, argues that only acts causing a delivery are sufficient to sustain venue in the actor's district, but not acts causing a sending. The government acknowledges that *Goldberg* is distinguishable because it involved a wire fraud, to which the broader venue statute is applicable, rather than mail fraud. It argues that in this case, which involved a conspiracy of 12 persons with all of whom except Turley normally situated in the Middle District, the reasonably foreseeable acts and crimes of the other conspirators should be viewed as his.

We need not decide whether the causation theory adopted in *Goldberg* is equally applicable to mail fraud, if so whether it can be applied under the facts here, or whether venue on substantive counts may be based on the government's theory of the adoption of conspirators' actions. Instead, we find persuasive the government's argument that Turley waived his right to challenge venue by not presenting his argument before the close of the prosecution's case-in-chief.

In *United States v. Sandini*, 803 F.2d 123, 127 (3d Cir.1986), *cert. denied sub nom. Moody v. United States*, 479 U.S. 1093, 107 S.Ct. 1306, 94 L.Ed.2d 161 (1987), this court reiterated the generally applicable rule "that objections to venue are waived if not raised in a timely manner." Timeliness is viewed as "at least prior to

the close of the government's case . . . and perhaps before the trial begins." *Id.* quoting *United States v. Polin*, 323 F.2d 549, 577 (3d Cir.1963). We noted that there is an exception to the waiver rule when the defect in venue is not clear on the face of the indictment, but at trial the government fails to produce evidence to support the facially valid venue allegation.

Turley argues that he falls within this exception. The district court found that the venue defect Turley alleged was a defect that was clear on the face of the indictment. It nonetheless excused Turley's failure to object to venue prior to the close of the government's case in chief because it viewed the government's venue theory as novel and therefore it concluded that Turley's inaction was not an intentional relinquishment or abandonment of a known right.

If we were to adopt the district court's reasoning we would eviscerate the rationale for the waiver theory, which is to give the government an opportunity to either correct venue before jeopardy attaches or to provide additional proof, if possible, to cure an insufficient presentation on venue. An earlier objection would have permitted the district court to rule on the validity of the government's novel theory of venue before trial began. We find disingenuous Turley's argument that because he believed the government would be unable to sustain its venue theory, he was not required to raise the matter before trial. The government's venue theory was explicitly stated in the indictment and Turley, having waited until the government's case was closed, cannot now resurrect an objection that was or should have been evident. We conclude, therefore, that Turley waived any objection to venue.

## IV.

### Jury Charge

Turley's final argument is that the trial court erred in instructing the jury as to the amount of scrutiny that should be given to the testimony of government witnesses who had entered into plea agreements with

the United States. Turley requested that the jury be charged that "[t]he testimony of a witness who testifies under a plea agreement or under immunity should be scrutinized more carefully than the testimony of an ordinary witness," App. at 40, and contends that the court erred in failing to give the requested charge.

■ In reviewing instructions to the jury, we must not isolate particular language but must examine it in the context of the entire charge. *See United States v. Goldblatt,* 813 F.2d 619, 623 (3d Cir.1987). We are satisfied after examining the entire charge given by the trial judge regarding the credibility of these witnesses that the court adequately covered this subject.

The trial court informed the jury that "there are some criteria that the law says you should use in making [credibility] decisions." The court continued, "[o]ne of the criteria is to go back over and think about who the witness was and say to yourself does that witness have an interest in the outcome of this case, for instance, or is the outcome of this case so important to that witness that he or she might have allowed themself [sic] to answer questions in a way that weren't quite full or weren't quite truthful." App. at 1988. The judge stated that a number of the witnesses admitted they were involved in the illegal conduct involved in this case and that the jury could consider the fact that some of the witnesses had been granted immunity by the government or had entered into plea agreements. The judge specifically explained the nature of testifying under a grant of immunity. The court told the jury, "[y]ou can consider those things in deciding, did that fact, in any way, influence their testimony to water it down, exaggerate it, to change it or to influence it in any way." App. at 1990. He further informed the jury that they could not convict Turley merely because of his association with the witnesses involved in the conspiracy.

■ The trial court is not obliged to instruct the jury in the precise words proffered by the defendant. *See United States v. Washington,* 797 F.2d 1461, 1476 (9th Cir.1986). The charge given fully covered the essence of Turley's request with respect to the scrutiny to which the jury could subject the prosecution witnesses. We find no legal error nor any abuse of discretion.

For similar reasons we find completely meritless Turley's claim that the court failed to instruct the jury on the defense's "theory of the case." That "theory" was Turley's denial that he knew the ESP applications were bogus; it was in effect a denial that Turley had the requisite intent. These issues were fully covered. The trial judge instructed the jury that they could not convict Turley unless they found he entered the scheme with the specific intent to defraud Equitable. The court repeatedly cautioned the jury that Turley's association with known conspirators was not enough to convict him. The jury was properly instructed on the defense theory of the case.

Turley also claims that the prosecuting attorney impermissibly vouched for the credibility of the government witnesses. He objects to a reference by the prosecutor that the government assures itself that plea bargaining witnesses are telling the truth by doing a thorough investigation so that "when they lie to you, you know when they're lying to you." App. at 1950. The court denied the defense's objection on the ground that the statement was a fair response to a defense statement.

In its opinion denying Turley's post-trial motions, the trial court explained that any remarks the prosecutor made concerning his witnesses were only to inform the jury again of evidence already contained in the record that all plea agreements by these witnesses required them to provide truthful testimony. This was not a statement of personal belief in the credibility of the witnesses but a fair rebuttal of the defense's allegations of perjured testimony by plea bargained witnesses supported by the record. *See United States v. Beaty,* 722 F.2d 1090, 1097 (3d Cir.1983); *see also United States v. Diloreto,* 888 F.2d 996, 999–1000 (3d Cir.1989) (prosecutor may properly rehabilitate witness by referring to the condition of plea bargaining requiring truthful testimony; impermissible vouching for United States Attorney to tell jury "we don't put liars on the stand"

without explaining how government "ascertains the honesty or veracity of its witnesses"). Turley does not argue that the prosecutor's remarks were objectionable per se but only that they highlighted the need for a specialized credibility instruction on the plea bargaining/immunized witnesses. We have already found the charge adequate in this respect. The prosecutor's remark does not change that result.

## V.

### Conclusion

In sum, we have held with respect to the charge of conspiracy to commit mail fraud that the indictment sufficiently informed the defendant of the charges against him and that the government need not prove an actual agreement to use the mail in furtherance of the scheme to defraud. We have also held that Turley's claim that venue was improperly laid in the Middle District of Pennsylvania was waived when he failed to object to venue until after conclusion of the government's case. Finally, we have rejected Turley's objections to the jury charge. We will therefore affirm the judgment of conviction and sentence.