19 F.3d 1430
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Grace LENIHAN, Defendant-Appellant.
 No. 92-5812.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 9, 1994.
Decided March 29, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. M.J. Garbis, District Judge. (CR-92-56-MJG)
 William Kevin Renolds, Annapolis, MD, for appellant.
 Jefferson McClure Gray, Asst. U.S. Atty., Baltimore, MD, for appellee.
 Bruce C. Bereano, Annapolis, MD, for appellant.
 Lynne A. Battaglia, U.S. Atty., Baltimore, MD, for appellee.
 D.Md.
 AFFIRMED.
 Before WIDENER, WILKINSON, and MICHAEL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 This case presents the question whether defendant may challenge her conviction on grounds of improper venue when she previously failed to object to venue at trial or to specify venue as a basis of her motion for a directed verdict of acquittal. We hold that defendant's failure to raise a venue objection before the trial court constitutes a waiver of venue rights. We therefore affirm the district court's judgment of conviction.
 
 I.
 
 2
 This case arises out of an unusual love triangle involving defendant Grace Lenihan, a resident of Riverdale, Maryland. In December 1990, Lenihan met Dr. Patrick Roseboom, a researcher at the National Institutes of Health, through a video dating service. They became romantically involved, and dated for several months. In February 1991, Roseboom met Kathleen O'Connell of Dubuque, Iowa, at a friend's wedding in Indiana. Shortly after returning to his home in Washington, D.C., Roseboom broke off his relationship with Lenihan.
 
 
 3
 Apparently incensed at the termination of the relationship, Lenihan began a year-long campaign of harassment directed toward Roseboom and O'Connell, whom she blamed for the breakup. Lenihan first attempted to win back Roseboom by falsely claiming that she was pregnant. In April 1991, Lenihan altered an old laboratory report of a pap smear test to make it appear to be a positive pregnancy test, and mailed copies to both O'Connell and Roseboom. Although Roseboom first believed the altered test report, he refused to renew the romantic relationship with Lenihan. After a month of this charade, Lenihan informed Roseboom that she had lost the baby in a miscarriage. Roseboom eventually realized that Lenihan had never been pregnant, and told her that he did not want any more contact with her.
 
 
 4
 In the meantime, Lenihan began making large numbers of harassing hang-up telephone calls to O'Connell's home in Iowa and to Roseboom's NIH office and home. Roseboom responded by filing a complaint with the NIH police. Through a caller ID device on Roseboom's office phone, the police learned that the calls were coming from Lenihan's home number and charged Lenihan with telephone misuse. In August 1991, following her arraignment, Lenihan was released subject to the condition that she not attempt to contact Roseboom or O'Connell again. Despite the release conditions, however, Lenihan continued to make as many as fifty hang-up or threatening phone calls per day to O'Connell's home in Iowa. Lenihan even listed O'Connell's number with MCI's "Friends and Family" discount plan to get a reduced rate on the harassing calls. During her release period, Lenihan also sent numerous harassing letters to O'Connell to discourage her from seeing Roseboom. For example, on September 21, 1991, she sent an anonymous letter to O'Connell stating:"You'll be dead if you ever try to sleep with him again."
 
 
 5
 In October 1991, O'Connell moved to Washington, D.C., to live with Roseboom. At this point, Lenihan devised a new strategy to harass them. She filed false criminal charges against them, claiming that (1) Roseboom had assaulted and threatened her, (2) O'Connell had sent her threatening letters, and (3) both had made harassing phone calls to her. The police determined that none of the claims were true, and dropped the charges against O'Connell and Roseboom.
 
 
 6
 On February 13, 1992, a federal grand jury issued a five-count indictment charging Lenihan with (1) telephone harassment of Roseboom's NIH laboratory, (2) telephone harassment of O'Connell's Iowa home, (3) telephone harassment of Roseboom's Washington, D.C., home, (4) sending a threatening letter to O'Connell on September 21, 1991, and (5) making a false statement to the FBI in connection with her false criminal reports. Lenihan was released following an arraignment, subject to the conditions that she stop harassment of Roseboom and O'Connell and that she be placed on electronic home monitoring. She violated both of these conditions, however, by continuing to make harassing calls to NIH and by leaving her home during curfew hours. Her release conditions were therefore revoked, and she was detained at the Baltimore City Jail. Lenihan remained undaunted by her incarceration, however, and continued to make harassing calls to NIH from the pay telephone in the Women's Unit of the City Jail.
 
 
 7
 In August 1992, Lenihan was tried before a jury, and convicted on all five counts of the indictment. At sentencing, the district court imposed concurrent sentences of thirty months for Count One, six months for Counts Two and Three, thirty months for Count Four, and twenty-four months for Count Five, as well as a three-year period of supervised release. Lenihan now appeals.
 
 II.
 
 8
 Lenihan's chief contention on appeal is that the government failed to prove venue with respect to Count Four, which charged her with depositing a threatening communication in the mail on September 21, 1991, in violation of 18 U.S.C. Sec. 876. The Constitution guarantees a defendant the right to be tried "in the State where the said Crimes shall have been committed." U.S. Const. art. III,Sec. 2, cl. 3; see also FED. R. CRIM. P. 18 ("[T]he prosecution shall be had in a district in which the offense was committed."). More specifically, for offenses involving use of the mails, venue is appropriate" in any district from, through, or into which such ... mail matter ... moves." 18 U.S.C. Sec. 3237(a). Here, Lenihan argues, the government has presented no evidence linking the letter that was the subject of Count Four with the District of Maryland: the postmark on the letter shows that it was mailed in Washington, D.C.; O'Connell received the letter in Iowa; and there was no evidence that a letter from Washington, D.C., would travel through Maryland en route to Iowa. Lenihan therefore contends that her conviction under Count Four must be dismissed for lack of venue.
 
 
 9
 We have no occasion to address the merits of Lenihan's venue claim because Lenihan has waived any objection she may have had by failing to raise it below. It is well-established that venue is a personal privilege that may be waived by a defendant's failure to make a timely objection. See United States v. Turley, 891 F.2d 57, 61 (3d Cir.1989); United States v. Winship, 724 F.2d 1116, 1124 (5th Cir.1984). The timeliness of a defendant's objection depends, in turn, upon whether the defect in venue is clear on the face of the indictment, i.e., whether the indictment alleges facts that, even if proven,
 
 
 10
 would not sustain venue. See United States v. Bohle, 445 F.2d 54, 58-59 (7th Cir.1971). If the defect in venue is apparent on the face of the indictment, the defendant must make the objection before trial. See United States v. Melia, 741 F.2d 70, 71 (4th Cir.1984). On the other hand, if the indictment contains a proper allegation of venue but the government fails to prove that allegation at trial, an objection can be made at the close of the government's case or at the close of the evidence. See id.; see also United States v. Netz, 758 F.2d 1308, 1311-12 (8th Cir.1985); United States v. John, 518 F.2d 705, 708-09 (7th Cir.1975).
 
 
 11
 Here, Count Four of Lenihan's indictment contained a proper allegation of venue; it stated that Lenihan mailed a threatening communication to O'Connell in "the State and District of Maryland." Therefore, in order to properly preserve the venue issue for appeal, Lenihan need only have made a proper objection to venue by the end of trial. Because the September 21, 1991, letter--along with the envelope postmarked Washington, D.C.--was available to Lenihan in advance of trial, Lenihan was aware of the possibility of a venue defect even before the trial began. She certainly was on notice of the alleged defect in venue by the end of the government's case, when the government admitted the letter into evidence. Despite these opportunities to raise a venue objection, however, Lenihan never made a motion to dismiss Count Four for lack of venue before the district court.
 
 
 12
 Lenihan nonetheless contends that she made a general motion for a directed verdict of acquittal at the close of the government's case, and argues that this general motion constituted a "proper objection" to venue. See United States v. Jones, 174 F.2d 746 (7th Cir.1949). We think that Lenihan's reliance on the rule enunciated by Jones--that a general motion to acquit suffices to preserve a venue objection for appeal--is misplaced for two reasons. First, as a threshold matter, the Seventh Circuit itself has "question[ed] ... the continued viability of the Jones rule." United States v. McDonough, 603 F.2d 19, 22 (7th Cir.1979). Other courts have limited the circumstances in which the Jones rule will apply. See Gilbert v. United States, 359 F.2d 285, 288 (9th Cir.1966). The Second Circuit has stated that, as a general matter, "the [venue] issue has been deemed to be waived where ... it is not specifically articulated in defense counsel's motion for judgment of acquittal." United States v. Grammatikos, 633 F.2d 1013, 1022 (2d Cir.1980) (emphasis added); see also United States v. Boney, 572 F.2d 397, 400 (2d Cir.1978) (stating that a general motion for acquittal is not sufficient to escape waiver).
 
 
 13
 Second, even if Jones has retained vitality, Lenihan's motion for acquittal falls under a well-established exception to that case. Courts applying Jones have repeatedly held that waiver occurs when, after making a general motion for acquittal, (1)the defendant is given an opportunity to specify the grounds for acquittal but does not raise a venue objection, see McDonough, 603 F.2d at 22, or (2)the defendant specifies the grounds for the motion to acquit, such as insufficiency of evidence on the substantive elements of the crime, but is silent as to venue, see United States v. Menendez, 612 F.2d 51, 55 (2d Cir.1979).
 
 
 14
 Here, when Lenihan moved for a verdict of acquittal, the district court stated its understanding that the motion was based on the government's failure to "establish the elements of the offense," and denied the motion. The court then asked whether Lenihan had "[a]nything else." Despite this opportunity to raise other grounds for her motion to acquit, Lenihan failed to articulate any venue objection. Therefore, assuming only arguendo that Jones were to apply, Lenihan's failure to articulate her venue objection when discussing her motion to acquit constituted a waiver of venue. See Gilbert, 359 F.2d at 288 (holding that a defendant's venue objection was waived because, although he made a motion for an acquittal,"nowhere in the ensuing argument did he assert venue had not been proved").
 
 
 15
 If we were to adopt Lenihan's reasoning that a defendant need not make a specific venue objection even when, as in this case, she was given every opportunity to state the grounds for her motion of acquittal, "we would eviscerate the rationale for the waiver theory, which is to give the government an opportunity to eithercorrect venue before jeopardy attaches or to provide additional proof ... to cure an insufficient presentation on venue." Turley, 891 F.2d at 61. Proper notice and opportunity for cure of a defect in the government's case is especially important for venue issues: "since[venue] is not an element of the offense, the government will not necessarily seek to prove the necessary connection unless the defense warns the government that the matter is at issue." United States v. Cordero, 668 F.2d 32, 44 (1st Cir.1981). This case provides a perfect example of the necessity for a specific objection. Had Lenihan raised her venue objection in a timely manner, the government might have cured the venue problem, if any, by (1)presenting evidence at trial that the letter at issue did actually move "from [or] through" Maryland, as required by 18 U.S.C. Sec. 3237(a), or (2)indicting Lenihan under 18 U.S.C. Sec. 875(c) for oral threats over the telephone to O'Connell.
 
 
 16
 Our holding that Lenihan may not raise her venue objection for the first time on appeal also assures that venue rights are being used not merely to "give[ ] the appellant a second bite at the apple" after a jury conviction, United States v. Powell, 498 F.2d 890, 892 (9th Cir.1974), but rather to "safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place." Platt v. Minnesota Mining & Manufacturing Co., 376 U.S. 240, 245 (1964). Here, we cannot discern any hardship whatever to Lenihan from the government's decision to prosecute her in Maryland. Maryland, her place of residence, presumably "offer[ed] conveniences and advantages to [her] which a trial in [another district] might lack." See Travis v. United States, 364 U.S. 631, 634 (1961). Moreover, having a separate trial on the charges alleged in Count Four would have ironically added to her hardship and expense. Had Lenihan genuinely felt inconvenienced or prejudiced by the government's decision to prosecute her in Maryland, she could simply have objected to the Maryland venue. Having failed to make an objection, she cannot now seek appellate review of the propriety of the venue for Count Four.
 
 III.
 
 17
 We find no merit in appellant's other assignments of error. For the foregoing reasons, the judgment of the district court is
 
 
 18
 AFFIRMED.